**I.C.E. CORPORATION, and Intercontinental Enterprises, Ex-Und Import GMBH, Plaintiffs,**

v.

**.ARMCO STEEL CORP. and The International Nickel Co., Defendants.**

United States District Court
S. D. New York.

Dec. 22, 1961.

Maurice B. Stiefel, New York City, Samuel L. Davidson, Herbert J. Jacobi and Robert B. Jacobi, Washington, D. C., of counsel, for plaintiffs.

Breed, Abbott & Morgan, New York City, Byerly, Townsend, Watson & Churchill, New York City, of counsel, for defendant Armco Steel Corp.

Cooper, Dunham, Dearborn & Henninger, and Sullivan & Cromwell, New York City, for defendant International Nickel Co.

**412**

METZNER, District Judge.

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), 28 U.S.C. The complaint seeks a declaratory judgment that defendants' patent is invalid and not infringed.

The plaintiffs are Intercontinental Enterprises, a German corporation having its principal office in Germany, and I. C. E. Corporation, a New York corporation having its principal place of business in New York. I. C. E. is a subsidiary of plaintiff Intercontinental. Defendant Armco Steel Corp, is an Ohio corporation and defendant International Nickel Co. is a Delaware corporation.

Defendant International Nickel owns a process patent for producing welded tubing, and it is alleged that defendant Armco asserts rights under that patent by reason of an exclusive license agreement.

Plaintiff Intercontinental manufactures equipment known as a welding machine and has sold the machine to the Lone Star Steel Co. of Texas in the belief that it would be used to form tubes having more than 65% iron content. Plaintiff intends to continue selling the machine to other customers in the United States.

In October 1960 Intercontinental and Lone Star reached a basic oral agreement for the purchase of plaintiff's machine. Thereafter, Lone Star notified Intercontinental that defendant Armco had communicated with Lone Star, accusing the machine of patent infringement. Lone Star then attempted to rescind its agreements with Intercontinental. As a result Intercontinental furnished Lone Star with a "patent infringement hold harmless clause". The revised agreement of sale is embodied in a letter sent by Lone Star to Intercontinental and accepted by the latter. The details of the letter are set forth in the complaint.

Defendant Armco also notified Intercontinental of the possibility of patent infringement by Intercontinental's machine. The complaint details the basis of plaintiff's position regarding validity and infringement, all of which has been communicated to Armco. Despite knowledge by Armco of plaintiff's position, it continues to threaten plaintiff and plaintiff's customers with the possibility of litigation. As a result plaintiff has brought this action.

■ Defendants urge several grounds to support their contention that this court does not have jurisdiction of the subject matter and that the plaintiff does not state a claim upon which relief can be granted. It is claimed that Armco does not have sufficient interest, by virtue of its license agreement with International Nickel, to give notice of infringement to the plaintiff. The cases are clear that only an exclusive licensee has such an interest. Western Elec. Co. v. Pacent Reproducer Corp., 42 F.2d 116 (2d Cir. 1930); Blair v. Lippincott Glass Co., 52 F. 226 (C.C.D.Ind.1892); see Paul E. Hawkinson Co. v. Carnell, 112 F.2d 396 (3d Cir. 1940).

Under the patent Armco manufactures welded pipe containing more than 65% iron. The letter of November 11, 1957, clarifying the license agreement between International Nickel and Armco, states that it was the intent of International Nickel not to grant licenses in Armco's field, even to someone who is not a customer of Armco. It further states that Armco would not grant licenses in International Nickel's field (the manufacture of welded tubular products containing less than 65% iron), even to someone who is not a customer of International Nickel. It is therefore clear that Armco had an exclusive license as to one type of pipe.

■ If there were geographical limits as to the exclusiveness of the license agreement, the licensee could give notice of possible patent infringement. A. L. Smith Iron Co. v. Dickson, 141 F.2d 3 (2d Cir. 1944); see Paul E. Hawkinson Co. v. Carnell, supra; Daimler Mfg. Co. v. Conklin, 145 F. 955 (C.C.S.D.N.Y. 1906). I see no reason why a different rule should apply if the limitations are

as to the type of finished product. Here plaintiff alleges that its machine was to be used in the manufacture of pipe having more than 65% iron content. The exclusiveness as to this type is sufficient to sustain the right of Armco to give notice of possible infringement. Cf. P. R. Mallory & Co. v. Automotive Mfrs' Outlet, Inc., 45 F.2d 810, 813–814 (S.D. N.Y.1930).

■■ Defendants urge that the allegations of the complaint in reality only seek relief against disparagement of plaintiff's right to sell its machine, by the notice sent by Armco to the plaintiff and its customer, Lone Star. Such a claim, they assert, arises under state law, and thus this court is without jurisdiction, absent diversity of citizenship. However, even if the complaint were to be so construed, plaintiff, to recover, must establish that the patent is invalid or not infringed. Thus one aspect of federal law would be essential to plaintiff's success, and the claim would lie within the federal question jurisdiction of this court. See Ostow & Jacobs, Inc. v. Morgan-Jones, Inc., 180 F.Supp. 38 (S.D. N.Y.1959). If the complaint is read as requesting a declaratory judgment that the patent is invalid or uninfringed, it clearly falls within the jurisdiction of this court, since defendant International Nickel is the owner of the patent and defendant Armco is the licensee. See Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876 (2d Cir.1952).

■ It is urged that there is no allegation of direct infringement of the patent by the plaintiff or that the plaintiff has any intention of infringing the patent. Plaintiff does not claim that direct infringement is involved. The question is whether as a contributory infringer plaintiff may maintain this action.

35 U.S.C. § 271(c), which defines contributory infringement, does not include the limitation that such infringement must occur "within the United States", which is found in subdivision (a) of that section, defining direct infringement. Subdivision (c) merely refers to anyone who sells "a material or apparatus for use in practicing a patented process, constituting a material part of the invention". It is unnecessary to determine whether the sale to Lone Star was consummated within the United States, because the complaint alleges that the plaintiff intends to continue to sell its product in the United States and has been warned by Armco that if it does it will be subject to suit for infringement. Thus defendants have tendered the issue of patent infringement. It is not necessary that the machine be shipped to this country and put into actual operation before an action for declaratory judgment is instituted. Under the cases a justiciable controversy is presented. 28 U.S.C. § 2201. Welch v. Grindle, 251 F.2d 671 (9th Cir.1957); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., supra; General Elec. Co. v. Refrigeration Patents Corp., 65 F.Supp. 75 (W.D. N.Y.1946).

Defendants also move to strike paragraphs 13 and 17 of the complaint. Paragraph 13 alleges that International Nickel obtained the issuance of the patent upon fraudulent misrepresentations to the Patent Office. Paragraph 17 alleges that defendants have violated the antitrust laws in relation to the patent in suit.

■ Charges that fraudulent misrepresentations were used in conjunction with issuance of a patent are not available as a basis for affirmative relief in private litigation regarding the validity of a patent. They may be used in a proceeding brought on behalf of the Patent Office to cancel the patent (Briggs v. United Shoe Mach. Co., 239 U.S. 48, 36 S.Ct. 6, 60 L.Ed. 138 (1915); Sachs v. Cluett, Peabody & Co., 91 F.Supp. 37 (S.D.N.Y.1950)), or as a defense to an action to enforce the patent (Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., 191 F.Supp. 652, (M.D.N.C. 1961); Armour & Co. v. Wilson & Co., 168 F.Supp. 353 (N.D.Ill.1958)).

■ Similarly, violations of the antitrust laws may be used as equitable defenses in an action brought by a patentee charging infringement. However, they may not be used as part of an affirmative case in an action seeking declaratory judgment of invalidity and infringement. E. W. Bliss Co. v. Cold Metal Process Co., 102 F.2d 105 (6th Cir.1939); Dimet Proprietary, Ltd. v. Industrial Metal Protectives, Inc., 109 F.Supp. 472 (D.Del. 1952).

The motion to dismiss is denied. The motion to strike paragraphs 13 and 17 is granted. So ordered.