GOVERNMENT EMPLOYEES INSURANCE COMPANY

v.

Mrs. Ruby P. A. LeBLEU, Mitchell James LeBleu, Louis Molier, Horace Boquet, Mrs. Horace Boquet, Calvin Deroche, Mrs. Calvin Deroche, Glenda June Goodman, William Edgar Goodman, and General Finance Corporation, Jeanne and Evence Verdin.

Civ. A. No. 66–456.

United States District Court
E. D. Louisiana,
New Orleans Division.
July 27, 1967.

Gordon F. Wilson, Jr., Hammett, Leake & Hammett, New Orleans, La., for plaintiff.

Keith M. Whipple, Houma, La., for defendants.

HEEBE, District Judge:

On February 17, 1966, a two-car collision occurred within this district. The first car was driven by one Mitchell James LeBleu, and carried four passengers; the second was occupied by two persons. Of the seven persons in the two cars involved, four died and two were seriously injured. The car driven by Mitchell LeBleu was owned by his mother, Mrs. Ruby LeBleu.

The present action was brought under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202, against Ruby LeBleu and the various injured parties and their representatives by Government Employees Insurance Company (hereafter "GEICO" or "insurer"), the liability insurer of the LeBleu automobile. The insurer seeks a declaratory judgment in its favor against its insured, Ruby and Mitchell LeBleu, as well as all other "parties of interest" including "all persons who have, or might have, claims under the policy at issue herein." (Count 19 of the complaint). Declaratory judgment is sought on the sole issue presented by GEICO's allegation that the policy issued to Ruby LeBleu is invalid due to material misrepresentations made in her original application for the policy. The defendants Ruby and Mitchell LeBleu moved to dismiss the complaint for lack of jurisdiction over the subject matter.

The precise issue involved here is simple, but unique, and a proper resolution of it seems to involve some difficulty. Jurisdiction was alleged by the insurer to lie in diversity,[1] under 28 U.S.C.A. § 1332(a), GEICO properly alleging itself a "citizen" of the District of Columbia,[2] and each of the defendants citizens of Louisiana. The LeBleus' contention is that under the amendment to § 1332(c), (effective as to causes of action arising after August 14, 1964), the plaintiff insurer must be considered to be a "citizen" of Louisiana as well as the District of Columbia, and that there is therefore no diversity between plaintiff and any of the defendants.

Section 1332(c) basically serves to establish, for purposes of federal diversity jurisdiction, the concept of citizenship of corporations.[3] Having made corporations "citizens," the statute proceeds with the necessary step of fixing the method of determining the *state* of citizenship of a particular corporation.

The state of incorporation had been originally fixed by the courts as the state of citizenship of corporations.[4] The fic-

---

1. None of the parties have taken issue with the plaintiff's allegations of the state of citizenship of the individual defendants or of the allegation that plaintiff is incorporated and has its principal place of business in the District of Columbia; we therefore find no reason to question the accuracy of those allegations at this time.

2. Plaintiff's specific allegation was that the District of Columbia was the place of its incorporation as well as its principal place of business. This is sufficient (absent some additional state of which GEICO might be deemed a citizen) to make the plaintiff eligible to sue defendants of diverse citizenship under the diversity jurisdiction of this Court. Na-

tional Mutual Insurance Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949).

3. Something which had previously been established for all practical purposes by Marshall v. Baltimore & Ohio R. Co., 16 How. 314, 14 L.Ed. 953 (1853), and St. Louis & S. F. Ry. Co. v. James, 161 U.S. 545, 16 S.Ct. 621, 40 L.Ed. 802 (1896). See Wright, Federal Courts, § 27 (1963).

4. Although the *Marshall* case, supra, n. 3, ostensibly held that a corporation could not be a citizen or even be "deemed" to be a citizen, and that the citizenship of the stockholders must control, the case established an irrebuttable presumption that all of its stockholders are citizens of the corporation's state of incorporation.

tion was first extended by § 1332(c) to make a corporation also a citizen of the state in which it has its principal place of business. The latest amendment to § 1332(c) further stretches the concept of corporate citizenship with the following language:

> "*Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business."

 The constitutionality of this provision has not been called into question here. Certainly we would not be disposed to rehash here questions of the validity of the fiction of corporate citizenship, especially in this case of its use by Congress in limiting rather than expanding federal jurisdiction. The avowed and obvious purpose of the Congressional amendment was and is to deny resort to the federal judicial system by plaintiffs in two states in which the peculiar device of "direct action" statutes had resulted in an ever-increasing flood of litigation against insurance companies against which injured parties traditionally had no recourse directly. The sole net effect of the fiction erected by the amendment is not an enlargement but a restriction of the availability of federal jurisdiction[5] for such cases. And surely nothing is more firmly "settled" than the principle that Congress has the power to limit the jurisdiction of the federal courts in whatever extent it deems fit, Ex Parte McCardle, 7 Wall. 506, 19 L.Ed. 264 (1868); Cary v. Curtis, 3 How. 236, 245, 11 L.Ed. 576 (1845), with the sole possible limitation on that power which may be imposed by the requirements of due process, see Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2nd Cir. 1948); Wright, Federal Courts § 11, p. 24 (1963). Moreover, the mere fact that Louisiana and Wisconsin have created the fiction of "direct action" against insurers, thus allowing the exercise of diversity jurisdiction in cases not previously cognizable therein, seems justification enough for the corresponding fiction erected by the 1964 amendment to § 1332 (c) denying access to federal courts for such cases.

Be that as it may, the constitutional issue of the validity of § 1332(c) has not been argued by the parties here. The insurer certainly did not wish to raise the issue, and in fact has waived in this case whatever protection the provision may have afforded it in bringing this declaratory suit. The insured parties actively rely on the validity of § 1332(c), their only contention being that since under that section the insurer must be considered to be of the same citizenship as the insured in diversity suits brought un-

---

5. The proviso of § 1332(c) has the sole effect of destroying diversity in direct actions by injured parties against insurers whenever there would be no diversity as between the injured party and the insured tortfeasor. On first impression it might be supposed that the proviso may contain a loophole actually allowing the exercise of diversity jurisdiction in cases not theretofore cognizable in federal courts. For example, where the injured party is a citizen of Louisiana, the insured tortfeasor a citizen of Mississippi, and the insurer incorporated in Louisiana, the possibility suggests itself that the proviso of § 1332(c) would operate to make a direct action by the injured party against the insurer (without joinder of the alleged tortfeasor) cognizable in the federal jurisdiction since the insurer would have to be "deemed" a citizen of Mississippi. That possibility is forestalled by the simple fact that a corporation, unlike an individual, may be (i.e., deemed) a citizen of more than one state, Cf. Wright, Federal Courts, p. 77 (1963), and that this rule is embodied in the express wording of the § 1332(c) proviso which states that in a direct action the
> "insurer shall be deemed a citizen of the State of which the insured is a citizen, *as well as* of any State by which the insurer has been incorporated and of the State where it has its principal place of business." (Emphasis supplied.)

der the Louisiana direct action statute, the provision ought not to cease to operate merely because the insurer has chosen to bring *the same matter* up by way of the declaratory judgment procedure. Movers contend that § 1332(c) ought to apply in this situation to make GEICO a citizen of the same state as its insured, and therefore that no diversity exists between the parties, all of whom would then be considered citizens of Louisiana.

The thrust of the movers' argument, as we view it, is an attempt at an interpretation and a formulation of the true nature of the Declaratory Judgment Act.[6] We agree fundamentally with the interpretation proffered, but deny the motion for reasons which will appear below.

The Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202, was enacted in 1934, the aim of its supporters being to provide a means of settling actual controversies before they ripen into violations of law or a breach of contractual duty. 3 Barron & Holtzhoff Federal Practice and Procedure § 1262, p. 273, n. 13.1. The judgment rendered in a declaratory suit comprises "an authoritative judicial statement of the jural relationships between parties to a controversy." 62 Harvard L.Rev. 787 (1949). The declaratory judgment procedure is well put into its proper context by Professor Wright:

"The traditional and conventional concept of the judicial process has been that the courts may act only in case a litigant is entitled to a coercive remedy, such as a judgment for damages or an injunction. Until a controversy had matured to a point at which such relief was appropriate and the person entitled thereto sought to invoke it, the courts were powerless to act. At times,

however, there may be an actual dispute as to the rights and obligations of the parties, and yet the controversy may not have ripened to a point at which an affirmative remedy is needed. Or this stage may have been reached but the party entitled to seek the remedy may fail to take the necessary steps.

\* \* \* \* \* \*

"In all of these situations the declaratory judgment procedure provides a useful solution. It provides a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." Wright, Federal Courts § 100, pages 390 and 391 (1963).

Much of the discussion of the Act in cases and articles has been concerned with a reevaluation, in terms of the Act, of the constitutional requirements of "case or controversy." Thus, much debate has been devoted to the question of determining the point in an "actual controversy" at which a prospective claimant may be allowed to sue under the Act and still meet the constitutional requirement. To allow such prospective plaintiffs to bring to court actual controversies "before they ripen into violations of law" is certainly a major reason for the Act. But an equally necessary and desirable function of the Declaratory Judgment Act has been to allow a prospective defendant to expedite the hearing of his defense to an impending or threatened action by another. Often in this situation "ripeness" is not an issue, the only thing standing between the parties and an adjudication of their contro-

---

6. At the risk of perhaps reading too much of the esoteric into movers' memorandum and argument, we venture to find therein the suggestion of another basis for the motion to dismiss: that, separate and apart from any consideration of, or interpretation of, the Declaratory Judgment Act, the denial of federal jurisdiction to one party must, under rights of due process and equal protection, extend to include the denial of the jurisdiction to the opposing party where (a) exactly the same cause of action is presented to the Court, or attempted to be presented, by both parties, and (b) the opposing party is not such a one as traditionally had the right to present the action but is allowed to bring it purely by reason of a procedural device such as the Declaratory Judgment Act.

versy being delay on the part of the one asserting the claim in bringing it before a court. The Act serves "to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage had accrued." 3 Barron & Holtzoff, Federal Practice and Procedure (Wright Edition) § 1262, p. 273, n. 13.

The reversal of the nominal status of the parties occasioned where a prospective defendant initiates what is really the opposing party's action has created difficulties in situations where the status of a party as a plaintiff or a defendant is important. For example, the question arises as to which party the nominal plaintiff or the traditional (real) plaintiff, should bear the burden of proof of his case.[7] Cf. 6A Moore's Federal Practice ¶ 57.31[2].

 Although we have found little or no authority directly in point, we hold that for purposes of determining the existence of federal jurisdiction, a cause of action must be considered as having been brought by the party asserting it, regardless of which party initiates the proceeding. "[T]he operation of the Declaratory Judgment Act is procedural only." Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) ; Skelly Oil Co. v. Phillips Co., 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." Skelly Oil Co. v. Phillips Co., supra. Such statements abound in the cases. A good statement of the principle is that the Act "did not enlarge the jurisdiction of the courts over subject matter or parties *or grant to a court juris-diction which did not otherwise exist.*" (Emphasis added.) Muskegon Piston Ring Co. v. Olsen, 307 F.2d 85, 88 (6th Cir. 1962). Obviously, the basic idea behind these expressions is that the Declaratory Judgment Act does not of itself create federal jurisdiction, that either diversity or federal question jurisdiction must exist; or, put another way, that the Act is not such a "law" that a suit "arising under" it automatically creates a federal question. Cf. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (concurring opinion of Justice Frankfurter). But the deeper meaning of the principle is that jurisdiction must be shown to exist over the cause of action had it been brought under conventional procedures. Thus, although the declaratory plaintiff must allege and prove jurisdiction, Ream v. Handley, 359 F.2d 728 (7th Cir. 1966), the jurisdiction alleged must meet the requirements imposed by the Constitution for conventional actions.

 Under conventional rules, federal question jurisdiction exists only where the "federal question" is presented by the plaintiff's cause of action. Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). A plaintiff, if his own claim presents no material and substantial federal question, is not allowed to secure a federal forum by anticipating a federal question in the opposing party's defense. Louisville & N. R. Co. v. Mottley, supra. Where a prospective defendant initiates the proceeding by way of a declaratory suit, it ought to be necessary to hold that the prospective plaintiff's claim must contain the federal question, and that a federal question posed by the defense of the declaratory plaintiff (traditional defendant) does not suffice for federal question

7. There is a sound reason for placing the procedural duty of burden of proof on the declaratory plaintiff in most cases despite his role as a real and traditional defendant: "Generally, it is reasonable and fair that one who brings another into court should have the burden of proving the prima facie elements of his asserted claim * * * [including] the burden of establishing the basis of federal jurisdiction." 6A Moore's Federal Practice ¶ 57.31[2], pp. 3157, 3159 (1966 Ed.). Such procedural accommodations of course have no application by analogy to the strict letter of the law of federal jurisdiction.

jurisdiction. To hold otherwise would be to dispense, for all practical purposes, with the requirement that the federal question be presented in the plaintiff's claim. Moreover, the correct position is demanded by the view of the Declaratory Judgment Act as a mere procedural vehicle for causes of action *otherwise* within the federal jurisdiction. In fact, the very policy of strict interpretation of the constitutional grant of federal jurisdiction should require the courts to "utilize conventional actions as the reference point from which to determine the proper application of jurisdictional rules to declaratory judgments." 62 Harvard L. Rev. 787, 803 (1949).

The intricacy of the problem has been avoided in a number of decisions which have dismissed cases in the exercise of judicial discretion, cf. Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), where the case might more properly have been dismissed for lack of jurisdiction. One case dismissed a declaratory action where the defendant (traditional plaintiff) had no possible federal question claim to assert, but it was not clear whether or not the declaratory plaintiff (traditional defendant) was asserting a defense which contained a federal question. Muskegon Piston Ring Co. v. Olsen, supra. Nevertheless the court used strong language which supports the conclusion that the federal question must arise out of the prospective plaintiff's claim and not out of a defense to such claim by the prospective defendant initiating the proceeding:

"[I]f the defendant Olsen [the traditional and real Plaintiff] does not have a potential claim against Muskegon, the plaintiff here as a potential defendant, upon which [Olsen] can sue in the federal court, no controversy under the patent laws exists, upon which Muskegon can bring an action for declaratory judgment in the federal court. Muskegon cannot confer jurisdiction on the court by a declaratory judgment action, if it did not otherwise exist." 307 F.2d at 89.

Several cases brought to our attention have avoided the question by finding that the declaratory plaintiff who asserted some defenses as a prospective defendant also asserted claims containing federal questions as a real and traditional plaintiff. See Ostow and Jacobs, Inc. v. Morgan Jones, Inc., 180 F.Supp. 38 (S.D.N.Y. 1959); I. C. E. Corp. v. Armco Steel Corp., 201 F.Supp. 411 (S.D.N.Y.1961); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876 (2nd Cir. 1952).

The Supreme Court has recognized the problem in Public Service Commission of Utah v. Wycoff Co., Inc., supra, wherein the court, after exercising its discretion in dismissing the declaratory action, observed:

"In this case, as in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the Utah courts. Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action." 344 U.S. at 248, 73 S.Ct. at 242.

■ The considerations which demand that federal question jurisdiction

in declaratory suits be satisfied with reference to the conventional and traditional status of the parties apply with equal force, in our opinion, in any declaratory judgment suit, regardless of the basic jurisdictional foundation. The problem has not arisen heretofore in diversity cases for the simple reason that calling the plaintiff a "real defendant" and the defendant a "real plaintiff" generally has no effect on the diversity relationship between those parties for jurisdictional purposes. The courts have not hesitated, however, to dismiss declaratory suits for lack of jurisdiction where a realignment of the parties in a multiparty proceeding to reflect their true relationship results in the absence of complete diversity. See Indemnity Ins. Co. of N. A. v. First Nat. Bank, 351 F.2d 519 (5th Cir. 1965). The problem arises in this diversity suit by reason of the 1964 amendment to § 1332(c), which provides that where an injured party sues the liability insurer of the alleged tortfeasor "in any direct action," the insurer will be deemed to be a citizen of the same state as the insured tortfeasor. The effect of the provision, as we have seen, is to withhold federal diversity jurisdiction over such claims whenever diversity is absent as between the injured party and the insured. The provision applies, in express terms, only to "direct actions against the insurer." Nevertheless the movers have argued, and we agree with this major premise, that the basic principles and concepts governing declaratory judgment procedure compel us to apply the § 1332(c) proviso to actions which, although instituted by the insurer under the Declaratory Judgment Act, are in reality "direct actions against the insurer."

The difficulty with movers' position is that this case is simply not a "direct action against the insurer" or a "direct action in reverse." We see no compulsion in this declaratory judgment proceeding, even if the parties are realigned to reflect their true status as suggested above, to presume that the legal relationship in this suit vis-a-vis the insurer and the injured parties should automatically and necessarily be that which might arise by way of a direct action suit. The true nature of the present declaratory action is identical to that presented in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In that case a declaratory suit was brought against the insured in the United States District Court for the Northern District of Ohio by the insurer seeking (as does the insurer in the present case) only a declaration of non-coverage. Although Ohio had no law similar to Louisiana's direct action statute, the Supreme Court upheld the joinder of the injured third party as a defendant. The "controversy" between the insurer and the injured party was found to lie in what might be called the probable "indirect action" posed by the possibility that the injured party could proceed against the insured, and if successful, then proceed against the insurer by supplemental process and action allowed under Ohio law.

The injured parties in the present suit have not (at least as of this date) pressed any claims against the plaintiff, GEICO, in counter claims in this proceeding, and, until very recently, had instituted no state court actions. We call attention to this fact, not because we deem it in any way controlling, but because it leads to a second consideration. Assuming that the injured parties herein wished to sue on their claims, there is nothing in the law of Louisiana to prevent them from suing whatever parties they deem proper without necessarily taking advantage of the Louisiana direct action statute. Certainly, the statute itself contains no prohibition against suits brought only against the insured individual tortfeasor and without joinder of any insurance carrier. In fact the statute, LSA–R.S. 22:655, states expressly that

> "The injured person or his survivors * * *, *at their option,* shall have a right of direct action against the insurer * * *." (emphasis added)

See also Finn v. Employers' Liability Assurance Corp., 141 So.2d 852, 862 (La. App. 1962).

■ Thus, although practically speaking, it will be a rare case in which an injured party will not elect to proceed under the statute, we cannot presume that any injured party *will* inevitably do so. To so presume would be to reduce to compulsion that which under the terms of the statute is left to the discretion of the individual. The fact that the injured parties in this suit have now instituted direct actions against the insurer in the courts of the state has no bearing on the issue. Jurisdiction is determined as of the date of the filing of suit; if jurisdiction existed then, nothing the parties do later can divest the court of its power to decide the case. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Morgan's Heirs v. Morgan, 2 Wheat. 290, 4 L.Ed. 242 (1817). Moreover, even had those suits been instituted by the injured parties prior to the filing of GEICO's petition here, we would hesitate to presume that GEICO's complaint has brought into this Court a suit identical with those actions.

■ "Direct action" by the injured parties in the present case is in no way required; any injured party may, if he wishes, choose not to "elect" that procedure and proceed in the indirect fashion which is the ordinary procedure in states without direct action statutes, and on the basis of which the *Maryland Casualty Co.* case allows declaratory suit by the insurer on the question of coverage.[8] We

will not presume that the relationship between the insurer and the injured parties in a declaratory suit brought by the insurer in which the insured is also a defendant is the same relationship which would arise by way of a suit under the direct action statute merely because the law of this state provides for the possibility of direct actions.

■ It should be particularly noted that the insurer here has sued only for a declaration of non-coverage. Had the insurer in this suit also raised the issue of the liability of the insured against the injured parties, we might be inclined to accept movers' argument, considering this suit in reality a "direct action against the insurer" and dismissing for lack of diversity under § 1332(c). But a declaratory suit seeking simply a declaration of non-coverage under the policy, whether brought by the insurer, by the insured, or even by an injured party, is simply not a direct action within the meaning of the Louisiana statute and 28 U.S.C.A. § 1332(c).

■■ The issue of coverage is, to use a loose expression, only "half" of a direct action under LSA–R.S. 22:655. The "direct action" granted therein and contemplated by § 1332(c) is an action brought by an injured party directly against the insurer of an alleged tortfeasor, by which the principal issue of the insured's liability may be immediately adjudicated without the necessity of first obtaining a judgment on that issue against the insured before proceeding against the insurer on the issue of coverage. The coverage issue was a proper

8. It is not clear to this Court whether the *Maryland Casualty Co.* case would require as a prerequisite to "case or controversy" the possibility of some "supplemental process and action" directly against the insurer available to an injured party once that party has obtained a final judgment against the insured tortfeasor. Only about half the states (Ohio, the reference point of *Maryland Casualty*, among them) provide such a procedure to the injured party after judgment, see Lassiter, Direct Actions Against the Insurer, 1949 Ins.L.J. 411, 414. The

probability is that even that supplemental procedure is not a necessary element for jurisdiction under the Declaratory Judgment Act. Cf. Central Surety & Insurance Corp. v. Caswell, 91 F.2d 607 (5th Cir. 1937), wherein the Court of Appeals stated: "The injured passengers have a material interest in the outcome of the suit. Appellant [insured] has the right to have its obligations to them as well as to the insured determined." 91 F.2d at 609. The question has no bearing on the determination of the present case however. See n. 9 and text infra.

one as between injured parties and insurers before the passage of the Direct Action Statute, at least where the policy of insurance was one of "true liability" rather than indemnity, see 29A Am.Jur. § 1485, n. 13; the only step eliminated by the statute was the necessity of first litigating the liability issue against the insured. Under the direct action statute, an injured party may now litigate both the insured's liability as well as the coverage issue in a single proceeding against the insurer. If that procedure is not elected, the coverage issue is still a proper matter to be litigated between the injured party and the insurer after a judgment is obtained against the insured on the issue of liability and apart from the "direct action" grant of LSA–R.S. 22:655; this is true now particularly in view of additional language in that section which virtually rules out the possibility of simple indemnity policies and makes every policy of liability insurance a "true liability" policy.[9] Thus, litigation of the coverage issue between the injured party and the insurer after judgment of liability has been obtained against the insured is by no means a "direct action" within the meaning of 28 U.S.C.A. § 1332(c). See Carvin v. Standard Accident Insurance Co., 253 F.Supp. 232(E. D.Tenn.1966); White v. United States Fidelity & Guaranty Co., 356 F.2d 746 (1st Cir. 1966). And, as we have stated, the anticipation of that procedure by way of declaratory judgment suit, as sanctioned by the *Maryland Casualty Co.* case, does not automatically bring the Direct Action Statute into play merely because the benefits of that statute are available to injured parties at their election.

Nor do the movers have any basis for claiming a denial of due process or equal protection rights here on the ground that the insurer is allowed the advantage of drawing into the federal system an action which cannot be taken there by an injured party. On the contrary, as we have suggested, we see no reason to prohibit any injured party from seeking in this Court a declaration of coverage against the insurer of the alleged tortfeasor [10] without application of the § 1332(c) proviso.

For the foregoing reasons, the motion of the defendants Mitchell and Ruby LeBleu to dismiss this action for lack of jurisdiction is hereby denied.

9. The final paragraph of LSA–R.S. 22:655 states:

"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons * * * to whom the insured is liable * * *."

10. The only hint of the possibility of "unequal protection" this Court can discern in this connection would arise only in *states which not only have no* "direct action" procedure, but actively foster the policy of shielding the insurer from any involvement in the liability issues between injured parties and the insured. In such states, the *Maryland Casualty Co.* case would allow a declaratory suit by the insurer for non-coverage with joinder of the injured parties which (presumably) might not be initiated by the injured parties themselves due to the policy mentioned. See 6A Moore's Federal Practice ¶ 57.19, p. 3112 (1966 Ed.). But the Third Circuit did not consider the state policy of Pennsylvania as a bar to an injured party's recent suit against an insurer *on the issue of coverage,* dismissing the case after a detailed consideration of other, quite intricate issues. Provident Tradesmen B. & T. Co. v. Lumbermens Mutual Casualty Co., 365 F.2d 802 (3rd Cir. 1966). The "unequal protection" plea is weakened in any case since, accepting such state policies of shielding insurers in such situations as a reasonable implementation of traditional concepts of privity of contract, there is nothing violative of due process in allowing the insurer to waive the immunity thus granted whenever it sees fit to step forward and reveal its relationship to the insured. See 6A Moore's Federal Practice ¶ 57.19, p. 3112 (1966 Ed.).