844 F.2d 1185
 EVANSTON INSURANCE COMPANY, Plaintiff-Appellant Cross-Appellee,
v.
JIMCO, INC., et al., Defendants-Appellees,
and
Chromalloy Natural Resources Co., Defendant-Appellee,
the Cajun Company, Duke Transportation, Inc. and Duke
Equipment, Inc., Defendants-Appellees, Cross-Appellants.
 No. 87-3605.
 United States Court of Appeals,
Fifth Circuit.
 May 17, 1988.
 
 Allen D. Darden, H. Alston Johnson, III, Baton Rouge, for Evanston ins. co.
 S. Gene Fendler, James A. Brown, New Orleans, La., for Chromalloy Natural Resources Co., et al.
 Richard M. Eustis, Charles A. Nunmaker, New Orleans, La., for Peterson Maritime Services, Inc.
 Colleen McDaniel, Lafayette, La., for Duke Transp., Inc. and Duke Equipment.
 Peter J. Butler, Richard M. Ireland, New Orleans, La., Madison C. Moseley, Metairie, La., for Fairgrounds Corp.
 John V. Baus, Jr., Metairie, La., for E.B. Ludwig.
 Appeals from the United States District Court for the Middle District of Louisiana.
 Before RUBIN and POLITZ, Circuit Judges, and LEE*, District Judge.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Invoking diversity jurisdiction, an insurer who had been sued in more than 20 different state court actions filed a declaratory judgment action in federal court, seeking a judgment that its policy did not cover any of the claims asserted. The district court decided that it should abstain because the pendency of the same issues in the various state court actions was an exceptional circumstance warranting refusal to exercise federal jurisdiction. Because we read controlling Supreme Court precedent in Colorado River Water Conservation District v. United States[1] and Moses H. Cone Memorial Hospital v. Mercury Construction Corp.[2] differently, we hold that the court should entertain the declaratory judgment action.
 
 I.
 
 2
 North-West Insurance Company, an Oregon insurer now in the process of liquidation, was not admitted to write insurance in Louisiana. Its wholly owned subsidiary, Mid-Continent Underwriters, which has filed proceedings under Chapter 7 of the Bankruptcy Code, was licensed as an insurance agent and surplus lines broker in Louisiana. Mid-Continent placed with North-West a number of policies of liability insurance covering Louisiana businesses. Evanston Insurance Company, an unrelated company, had issued an errors and omissions policy covering Mid-Continent and its officers, directors, and agents.
 
 
 3
 The obligations to its insureds that North-West could not fully discharge at the time it was placed in liquidation included claims asserted against many of the Louisiana businesses that would have been covered by North-West policies. Claimants against these Louisiana businesses have filed at least 20 suits based on such claims in various state courts. In their posture as defendants in these state court suits, the Louisiana businesses have filed third-party claims against Evanston in its capacity as the errors and omissions carrier for Mid-Continent. The businesses assert that the North-West policies would have afforded them protection, Mid-Continent violated its obligations to them as North-West's insureds or committed other derelictions, and consequently Evanston is liable to them under the errors and omissions policy it had issued to Mid-Continent.
 
 
 4
 Evanston contends that, whatever the nature of Mid-Continent's negligent or intentional fault in placing policies with North-West, the liability that the Louisiana businesses assert results from the insolvency of North-West. It therefore contends that an exclusion in the errors and omissions policy negates coverage. That provision excludes any coverage under the policy with respect to:
 
 
 5
 ... claims based upon, arising out of, due to or involving directly or indirectly the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any insurance company in which the Insured has placed or obtained coverage for a client or an account ...
 
 
 6
 Evanston's policy also excludes coverage for claims for intentional commission of a knowingly wrongful act or omission.
 
 
 7
 Because the plaintiffs in the state court actions were not diverse in citizenship from the principal defendants, whom North-West had insured, Evanston could not remove the state court actions to federal court. The Louisiana businesses named as defendants were, however, diverse in citizenship from Evanston. Accordingly, Evanston filed suit in federal district court, naming as defendants each of the businesses that had been insured by North-West under policies placed by Mid-Continent, seeking a declaratory judgment that the errors and omissions policy does not cover the third-party claims. Evanston contended that the provision quoted above excludes each of the third-party claims from the policy's coverage because each claim arose directly or indirectly from the financial plight of North-West. The businesses responded by filing counterclaims asserting coverage and alleging various factual and legal bases for their contentions that Mid-Continent either had been negligent in placing policies with North-West or had placed the policies with North-West intentionally despite its knowledge that North-West was insolvent.
 
 
 8
 Some of the insured Louisiana businesses that are defendants in the federal court action contended that the district court lacked jurisdiction because the diversity jurisdiction statute, 28 U.S.C. Sec. 1332(c), denies federal jurisdiction over a direct action against an insurer. These defendants also contended that the action should be dismissed because the federal forum was inappropriate under principles of abstention. The district court held that it had jurisdiction, but dismissed the action because the state forums were more appropriate. 664 F.Supp. 1004. Evanston appeals and only two defendants respond, seeking to uphold the judgment of dismissal.
 
 II.
 
 9
 The Louisiana Direct Action Statute[3] permits an injured party to sue the insurer of the person against whom he asserts a claim. Because this permitted Louisiana residents to file tort claims against non-resident insurers without joining the Louisiana resident who allegedly committed the tort, Louisiana federal courts were inundated with suits based on diversity jurisdiction filed by Louisiana residents who met the requirement of complete diversity by naming only a non-resident insurer as the defendant. Accordingly, in 1964, Congress amended the diversity jurisdiction statute, 28 U.S.C. Sec. 1332, to provide "in any direct action against the insurer of a policy or contract of liability insurance ... such insurer shall be deemed a citizen of the State of which the insured is a citizen," in addition to its other states of citizenship.
 
 
 10
 As the district court correctly held, the statute by its terms applies only to a direct action "against" the insurer. The phrase "direct action" is a term of art, and neither the statute nor the cases interpreting it support the view that it includes every action in which an insurance company is a party.
 
 
 11
 The history of the Louisiana Direct Action Statute demonstrates that the statute is a procedural convenience, a telescoping of the actions available to the victim of the alleged conduct of an insured.[4] Before adoption of the statute, any litigation was between the victim and the actor, whether insurance existed or not. If the victim won on the merits, the actor would be required to pay the judgment and could then seek indemnity from the insurer, thus necessitating two lawsuits or at least one lawsuit and a claim procedure. If the actor should be insolvent and unable to pay the judgment (and therefore not in need of indemnity), the victim would not be paid and would have no right to seek recovery from the insurer directly.
 
 
 12
 In order to avoid these problems, the Direct Action Statute gives the victim the right to sue the insurer either jointly with, or without joining, the insured. Such an action is not one by an insured against his own carrier to resolve coverage issues, and it is not one brought by the carrier itself to resolve coverage or other issues, regardless of the defendant. In other words, the fact that an insurer is a "direct" party does not make the litigation a "direct action," and the language of Sec. 1332(c) clearly confirms that view.
 
 
 13
 Three years after Congress adopted the amendment to Sec. 1332, a federal district court held in Government Employees Insurance Co. v. LeBleu[5] that the statute as amended did not preclude a Louisiana non-resident insurer from invoking diversity jurisdiction in an action against Louisiana-resident claimants to seek a declaratory judgment that its insurance policy did not cover a claim. The defendants argued, as the defendants do here, that this was a direct action in reverse, barred by the purpose of the 1964 amendment. The district court held, however, that the action was permitted by the express terms of Sec. 1332, as amended.[6]
 
 
 14
 In Campbell v. Insurance Co. of North America,[7] we held that Sec. 1332(c) barred the exercise of diversity jurisdiction over a particular type of action by an insurance company against an insured, despite the argument that the action was not a direct action against the insurer. Campbell was not a declaratory judgment action, but involved an unusual state appellate procedure: Texas law provided for appeals from workmen's compensation awards by trial de novo, in which even when the insurer rather than the insured brought the appeal, "the overall proceeding seen as a whole [was] that of a process initiated by the injured work[er] against the insurer"[8] with the burden of proof remaining on the injured worker.[9] In Dairyland Insurance Co. v. Makover,[10] we distinguished Campbell and held that Sec. 1332(c) did not bar a declaratory judgment action brought by an insurer seeking a declaration as to coverage. Dairyland controls our resolution of this issue. The district court had jurisdiction.
 
 III.
 
 15
 Having jurisdiction, did the district court err in failing to exercise it? The Supreme Court has recognized three types of abstention.[11] When a case involves unsettled questions of state law, the resolution of which may make it unnecessary to decide a federal constitutional question, the federal court should abstain pending resolution of the state law questions by a state court.[12] Further, a federal court should abstain from deciding a case to avoid needless conflict with a state's administration of its own affairs.[13] Additionally, a federal court should abstain from deciding actions brought in an equitable setting when considerations of comity and federalism, relating both to a state's interest in pursuing an ongoing state court proceeding and to the state's ability to consider federal constitutional claims in that setting, so dictate.[14]
 
 
 16
 None of these situations is, of course, present here. In Colorado River Water Conservation District v. United States, however,[15] the Supreme Court approved dismissal of a federal court suit on the basis of "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' "[16] although abstention would not have been appropriate under previously recognized abstention doctrines. Whether a federal court should defer to pending state court actions, Colorado River tells us, does not involve the same considerations as those involved when it decides that it should require the litigants to abide the results of litigation pending in another federal court. As between federal district courts, "the general principle is to avoid duplicative litigation,"[17] but the pendency of a state court action is ordinarily "no bar to proceedings concerning the same matter in the Federal court having jurisdiction,"[18] because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."[19] Therefore, the Court held, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention."[20]
 
 
 17
 The Court in Colorado River then listed illustrative factors a federal court might consider in assessing the appropriateness of dismissal: the assumption by either court of jurisdiction over property, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums, concluding that "[o]nly the clearest of justifications will warrant dismissal."[21] It ultimately decided that dismissal of the federal proceeding by the district court was warranted because "a number of factors clearly counsel[ed] against concurrent federal proceedings."[22] These factors were federal policy as expressed in federal legislation to avoid piecemeal litigation of water rights on a river system (the issue in the case being various claims to waters of the Colorado River), which the Court regarded as akin to the policy underlying the rule requiring that jurisdiction be yielded to the court that first acquires control of property; the apparent absence of any proceedings in the federal district court beyond the filing of the complaint; the extensive involvement of state water rights in the suit, which named 1,000 defendants; the 300-mile distance between the federal district court and the state trial court; and the existing participation by the federal government in the state proceedings.[23] The Court added, "We emphasize, however, that we do not overlook the heavy obligation to exercise jurisdiction."[24]
 
 
 18
 Seven years later, in Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,[25] the Court considered whether a federal court should stay an action because of the pendency of a state court suit. The Court stated that "the decision ... does not rest on a mechanical checklist" of the factors mentioned in Colorado River but "on a careful balancing" of them, "as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[26] It clarified that the priority element of the Colorado River balance "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."[27] To the four factors mentioned in Colorado River, it added two more: whether state or federal law provides the rule of decision on the merits,[28] and whether the state court proceeding would adequately protect the rights of the party that had invoked federal jurisdiction.[29]
 
 
 19
 In considering whether to abstain from deciding Evanston's declaratory judgment action, the district court discussed and applied each of the six Colorado River-Moses Cone factors. Upon reviewing its findings of fact under the Rule 52(a) clearly-erroneous standard and its ultimate conclusion for abuse of discretion,[30] we conclude that the district court misapplied several of the six factors to the circumstances of this case and failed to "heavily weight" the balance in favor of exercising jurisdiction. Let us first consider each of the six factors in turn.
 
 
 20
 (1) Jurisdiction over any res or property
 
 
 21
 This case does not involve any res or property over which any court, state or federal, has taken control. The district court, after identifying this as a factor to be considered, does not mention it further. This is not, however, a merely neutral item, of no weight in the scales. In Moses Cone, the Court considered the absence of this first Colorado River factor to speak against abstention: "The Hospital [the party seeking abstention] concedes that the first two factors mentioned in Colorado River are not present here."[31]
 
 
 22
 (2) The inconvenience of one forum relative to the other
 
 
 23
 In Colorado River, the Court identified "the inconvenience of the federal forum" as a factor for the federal court to consider in deciding whether to dismiss a federal court action because of a concurrent state proceeding.[32] The Court cited only Gulf Oil Corp. v. Gilbert[33] as support for consideration of this factor. Gulf Oil involved the doctrine of forum non conveniens. The district court had dismissed a suit filed in the Southern District of New York. The disputed event had occurred in Virginia, and the witnesses and evidence were located in Virginia, some 400 miles from the New York forum. The Court noted that compulsory process would not be available for some witnesses if the matter remained in the New York federal court. In Colorado River, the Court referred to the inconvenience of trying the case in the federal district court in Denver, 300 miles from the disputed area and from the Colorado state court with jurisdiction over that area.[34]
 
 
 24
 These cases indicate that the inconvenience factor primarily involves the physical proximity of the federal forum to the evidence and witnesses. The district court did not consider the relative locations of the forums, the location of evidence or witnesses, or the availability of compulsory process--the very concerns that make up the "inconvenience factor."
 
 
 25
 The defendants' principal places of business include eleven in Louisiana--two each in Metairie, Houma, and New Orleans, and one each in Harvey, Harahan, Gretna, Scott, and Lafayette--and two in Houston, Texas. The two defendants who answered the appeal, Duke and Cajun, both have their principal places of business in Lafayette, 45 miles by interstate highway from the federal courthouse in Baton Rouge. Mid-Continent, Evanston's insured, was a Louisiana corporation with its principal place of business in New Orleans. To the extent that the coverage issues involve evidence or witnesses formerly affiliated with Mid-Continent, it is likely that New Orleans will be important to the litigation, and the witnesses who might testify for the defendants are likely all to be in south Louisiana, save those in Houston, who do not object to the federal forum. Baton Rouge is therefore a central geographic point among the parties' geographical locations. The Middle District of Louisiana does not present the type of logistical difficulties found in Gulf Oil or Colorado River.
 
 
 26
 Additionally, as we have noted, the Court in Moses Cone clarified the inconvenience factor: the question is not whether the federal forum is inconvenient, but rather whether there is "any contention that the federal forum was any less convenient to the parties than the state forum."[35] Duke and Cajun are the parties who brought the motions ruled upon by the district court. The parallel state proceedings involving both Duke and Cajun are filed in the 15th Judicial District Court in Lafayette.
 
 
 27
 The question in the end is not whether Evanston can demonstrate that the Middle District is a "better" or "more convenient" forum. Rather, it is whether the inconvenience of the federal forum is so great that this factor points toward abstention.
 
 
 28
 (3) The desirability of avoiding piecemeal litigation
 
 
 29
 The district court referred to this factor as "critical" and weighing "in favor of dismissal." Because this case does not involve jurisdiction over a res or property, however, there is no danger of inconsistent rulings affecting property ownership. Therefore, the avoidance of piecemeal litigation does not weigh in favor of abstention.
 
 
 30
 Insofar as the Louisiana businesses have filed counterclaims against Evanston, this will result in only duplicative, not piecemeal, litigation. The prevention of duplicative litigation is not a factor to be considered in an abstention determination.[36] Moreover, if the federal court decides that the Evanston policy does not afford coverage for the claims made, then the need for further proceedings in state court may be obviated through a plea of res judicata.[37]
 
 
 31
 Except as to matters in which counterclaims have been filed, the district court need not rule on the underlying liability issues in order to determine the coverage issue. The coverage issue is a preliminary determination that must be made by the court that resolves these disputes. Like any coverage determination, it can and should be made without reference to whatever facts there may be that would dictate a finding of liability if there is coverage.[38]
 
 
 32
 (4) The order in which jurisdiction was obtained
 
 
 33
 The order of obtaining jurisdiction does not speak for abstention. Although the federal court suit was filed after the state courts had acquired jurisdiction, very little had occurred in any of the parallel state proceedings with regard to the claims against Evanston.
 
 
 34
 The defendants contend that under the Supreme Court's 1942 decision in Brillhart v. Excess Insurance Co. of America,[39] it was within the district court's discretion to dismiss the declaratory judgment action on the ground that the state courts could fully adjudicate all the matters in controversy between the parties in the actions already filed in those courts. The Supreme Court's more recent holdings in Colorado River and Moses Cone make clear that the existence of previously initiated state proceedings is merely one factor among many for the court to consider. Even in Brillhart, the Court expressly noted that it "[did] not ... attempt a comprehensive enumeration of what in other cases may be revealed as relevant factors governing the exercise of a district court's discretion."[40] Thus defendants' reliance on Brillhart is unpersuasive.
 
 
 35
 (5) Whether state or federal law will be applied
 
 
 36
 The district court held that Louisiana law would govern the construction of the insurance policies at issue and that federal law was not implicated. Therefore, it concluded that this factor weighed in favor of dismissal.
 
 
 37
 The absence of a federal-law issue does not counsel in favor of abstention, for as the Court stated in Moses Cone, "our task ... is not to find some substantial reason for the exercise of federal jurisdiction."[41] The presence of a federal law issue "must always be a major consideration weighing against surrender [of jurisdiction],"[42] but the presence of state law issues weighs in favor of surrender only in rare circumstances.[43] This case does not involve rare circumstances under which the presence of controlling issues of Louisiana law might make abstention appropriate.
 
 
 38
 (6) Adequate protection in state court
 
 
 39
 Although the district court identified this factor, it did not discuss its effect on the decision to abstain. Moses Cone introduced this factor, and it is clear from its nature that it can only be a neutral factor or one that weighs against, not for, abstention. A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings.
 
 IV
 
 40
 For these reasons, we reverse the district court judgment dismissing the case and remand for further proceedings consistent with this opinion.
 
 
 41
 REVERSED AND REMANDED.
 
 
 
 *
 District Judge of the Southern District of Mississippi, sitting by designation
 
 
 [1]
 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)
 
 
 [2]
 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)
 
 
 [3]
 La.Rev.Stat.Ann. Sec. 22:655 (West 1978)
 
 
 [4]
 See Johnson, The Louisiana Direct Action Statute, 43 La.L.Rev. 1455, 1455-1466 (1983)
 
 
 [5]
 272 F.Supp. 421 (E.D.La.1967)
 
 
 [6]
 Id. at 424-30
 
 
 [7]
 552 F.2d 604 (5th Cir.1977)
 
 
 [8]
 Id. at 605
 
 
 [9]
 Id
 
 
 [10]
 654 F.2d 1120, 1124 (5th Cir. Unit B Sept. 1981)
 
 
 [11]
 Colorado River, 424 U.S. at 813-17, 96 S.Ct. at 1244-46
 
 
 [12]
 Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); see also Colorado River, 424 U.S. at 814, 96 S.Ct. at 1244; see generally 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Secs. 4241-42 (1978 & Supp.1987)
 
 
 [13]
 Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); see also Colorado River, 424 U.S. at 814-15, 96 S.Ct. at 1244-45; County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); see generally Wright, Miller & Cooper, supra note 12, at Secs. 4241, 4244
 
 
 [14]
 See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); see also Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902-03, 52 L.Ed.2d 513 (1977); Colorado River, 424 U.S. at 816, 96 S.Ct. at 1245-46; see generally 17 Wright, Miller & Cooper, supra note 12, at Secs. 4241, 4251-55
 
 
 [15]
 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)
 
 
 [16]
 Id. at 817, 96 S.Ct. at 1246 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952))
 
 
 [17]
 Id. (citations omitted)
 
 
 [18]
 Id. (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910))
 
 
 [19]
 Id
 
 
 [20]
 Id. at 818, 96 S.Ct. at 1246
 
 
 [21]
 Id. at 818-19, 96 S.Ct. at 1246-47
 
 
 [22]
 Id. at 819, 96 S.Ct. at 1247
 
 
 [23]
 Id. at 819-20, 96 S.Ct. at 1247-48
 
 
 [24]
 Id
 
 
 [25]
 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)
 
 
 [26]
 Id. at 16, 103 S.Ct. at 937
 
 
 [27]
 Id. at 21, 103 S.Ct. at 940
 
 
 [28]
 Id. at 25-26, 103 S.Ct. at 941-42
 
 
 [29]
 Id. at 26, 103 S.Ct. at 942
 
 
 [30]
 Id. at 19, 103 S.Ct. at 938
 
 
 [31]
 Id. at 19, 103 S.Ct. at 938-39
 
 
 [32]
 Colorado River, 424 U.S. at 818, 96 S.Ct. at 1247
 
 
 [33]
 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)
 
 
 [34]
 Colorado River, 424 U.S. at 820, 96 S.Ct. at 1248
 
 
 [35]
 Moses Cone, 460 U.S. at 19, 103 S.Ct. at 939
 
 
 [36]
 Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246
 
 
 [37]
 Swope v. St. Mary Parish School Bd., 256 La. 1110, 241 So.2d 238, 242 (1970); Picard v. Mutual Life Ins. Co., 212 La. 234, 31 So.2d 783, 784 (1946); Jones v. Jefferson Parish School Bd., 447 So.2d 1205, 1207 (La.Ct.App.), cert. den., 450 So.2d 953 (La.1984); Harrell v. Rockett, 65 So.2d 670, 672 (La.Ct.App.1953)
 
 
 [38]
 See Dairyland Ins. Co. v. Makover, 654 F.2d 1120 (5th Cir. Unit B Sept.1981); see also Government Employees Ins. Co. v. LeBleu, 272 F.Supp. 421 (E.D.La.1967)
 
 
 [39]
 316 U.S. 491, 494-95, 62 S.Ct. 1173, 1175-76, 86 L.Ed. 1620 (1942)
 
 
 [40]
 Id. at 495, 62 S.Ct. at 1176
 
 
 [41]
 460 U.S. at 25, 103 S.Ct. at 942
 
 
 [42]
 Id. at 26, 103 S.Ct. at 942
 
 
 [43]
 Id