NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff,

v.

TEXACO REFINING & MARKETING, INC., Star Enterprises, Inc., and Riggers & Erectors, Inc. a/k/a Riggers & Erectors of Southeast Texas, Inc., Defendants.

Civ. A. No. H–92–1052.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 22, 1992.

Ronald E. Tigner and Dina Ricciardi, Soules & Wallace, Houston, Tex., for plaintiff.

Lawrence L. Germer and Charles K. Kebodeaux, Orgain, Bell & Tucker, Beaumont, Tex., Brenda A. Wade, Texaco Refining & Marketing, Houston, Tex., for defendants Texaco Refining & Marketing Inc. and Star Enterprise, Inc.

Lee Johnson, Beaumont, Tex., for defendant Riggers & Erectors, Inc.

## MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending before the Court is Defendants Texaco Refining & Marketing, Inc.'s ("Texaco") and Star Enterprises, Inc.'s ("Star") Motion to Dismiss, or in the Alternative, to Abate or Abstain (Document No. 40). After considering the motion, response, arguments, and authorities submitted by counsel, and for the reasons set forth below, the Court is of the opinion that the motion should be DENIED.

### I. *Background*

On April 3, 1992, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") filed this suit against Defendants Texaco, Star, and Riggers & Erectors, Inc. ("Riggers & Erectors"), seeking a Declaratory Judgment that National Union is not required under a policy of insurance issued to Riggers & Erectors to provide defenses to Defendants in four personal injury lawsuits all pending in that state district court of Jefferson County, Texas.

Texaco and Star subsequently filed suit in the 172nd Judicial District Court of Jefferson County, Texas on May 28, 1992, against National Union, seeking a declaration of coverage under the same insurance policy at issue in this case and seeking to impose upon National Union damages for breach of contract, bad faith denial of insurance coverage, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act.

On August 7, 1992, Defendants Texaco and Star then filed a motion to dismiss or stay National Union's action in this Court pending the determination of their later filed action in the state court in Jefferson County. This motion is based, in large part, upon principles set forth in *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), *reh'g. denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976) as applied by this Court in *Granite State Ins. Co. v. Tandy Corp.*, 762 F.Supp. 156 (S.D.Tex.1991), *aff'd. without op.*, 959 F.2d 968 (5th Cir.1992).

### II. *Discussion*

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same manner in the Federal court having jurisdiction....'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, *citing McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). Moreover, the United States Supreme Court has recognized "[t]he virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," stating:

[a]bstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

*Id.* 424 U.S. at 817, 813, 96 S.Ct. at 1246, 1244, *quoting County of Allegheny v.*

*Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959), *reh'g. denied,* 361 U.S. 855, 80 S.Ct. 41, 4 L.Ed.2d 93 (1959). In determining such "exceptional circumstances," the Supreme Court, guided by principles of " '[w]ise judicial administration' " and " 'giving regard to conservation of judicial resources and comprehensive disposition of litigation,' " has articulated six factors to be considered by a federal court in determining whether to exercise concurrent jurisdiction where there also exists a pending, later-filed state court action. *Id.* 424 U.S. at 816, 96 S.Ct. at 1246, *quoting Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 182, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). These factors include: (1) the avoidance of exercises of jurisdiction over particular property by more than one court; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the applicability of federal or state law to the merits of the claims at issue; and (6) the adequacy of the state court proceedings to protect the rights of the party that invoked the federal courts' jurisdiction. *Granite State,* 762 F.Supp. at 159, *citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 13–15, 103 S.Ct. 927, 936–937, 74 L.Ed.2d 765 (1983); *Colorado River,* 424 U.S. at 816, 96 S.Ct. at 1246; *Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185, 1190 (5th Cir.1988); *Goerner v. Barnes,* 730 F.Supp. 767, 768 (S.D.Tex. 1990).

In weighing the considerations listed above with regard to a particular case, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1247, *citing Landis v. North American Co.,* 299 U.S. 248, 251–254, 57 S.Ct. 163, 165–166, 81 L.Ed. 153 (1936). With these principles in mind, the Court now turns to the circumstances of the case at bar.

In the present case, the first of the *Colorado River* factors, involving the exercise of jurisdiction over particular property by more than one court, is inapplicable, since the possession of property is not at issue.

The second factor, the inconvenience of the federal forum, "primarily involves the physical proximity of the federal forum to the evidence and witnesses." *Granite State,* 762 F.Supp. at 159, *quoting Evanston Ins. Co.,* 844 F.2d at 1191. In their motion to dismiss, Defendants Texaco and Star have alleged that "... Texaco, Star, and numerous documents and witnesses are all located in Jefferson County...." In contrast, Plaintiff National Union has stated that "all or most matters and witnesses associated with the coverage issue in dispute in this federal action are located in Houston, as all considerations made in connection with the decision to underwrite the risk were made in Houston; the decision to underwrite the risk was made in Houston; and the policy was issued from Houston." (Document No. 32 at 13).

An examination of the nature of the federal court action leads to the conclusion that this Court represents at least an equally convenient forum for presentation of the evidence and witnesses. The action brought by National Union concerns itself exclusively with the interpretation and construction of a contract of insurance. Consequently, the only witnesses called to testify in the action, if any, most likely will be individuals personally involved in the negotiation and formation of that contract. Plaintiff has stated that all such persons expected to testify on behalf of National Union reside in the Southern District of Texas. Moreover, Defendants Texaco and Star both have conceded that their companies have a "significant presence" in Houston. For these reasons, the Court finds that this Court is at least an equally, if not a more, convenient forum for the parties and for presentation of the evidence and witnesses as would be the state district court in Jefferson County.

With regard to the third *Colorado River* factor, the Court takes no issue with De-

fendants' observation that, in light of the state court's denial of National Union's plea in abatement, there is a "danger of piecemeal and inconsistent adjudication between the instant suit and the Jefferson County action." Such a danger, however, is a creature of Defendants' own making. Indeed, the action in this Court was filed first, and Defendants thereafter chose to file a second lawsuit in Jefferson County rather than to assert their claims as counterclaims in this pending case. Although piecemeal or essentially duplicative litigation is wasteful, may produce inconsistent results, and should ordinarily be avoided, Defendants have no clean hands with which to make that argument here for it was they, not Plaintiff, who filed the second suit. Likewise, Defendants have it within their own power, without an order of this Court, to eliminate the potentially deleterious effect of such duplicative litigation. Moreover, this case—which basically requires the interpretation of an insurance policy—does not promise to be litigation involving critical matters of public interest where obtaining a single judgment of recognized precedential effect is of paramount importance. What amounted to a significant reason for avoiding duplicative suits in *Colorado River* simply does not exist in this case.

The fourth consideration, the order in which jurisdiction was obtained by the concurrent forums, also favors this Court's retention of jurisdiction. As observed above, National Union filed this action on April 3, 1992, nearly two months before Defendants' filed their suit in Jefferson County. Defendants contend, however, that National Union initiated the federal declaratory judgment action in anticipation of Defendants' state court suit and for the sole purpose of defeating Defendants' choice of forum. Such activity, Defendants argue, compels this Court to deny National Union the benefit of its action by dismissing this suit.

While Defendants are correct in stating that where (1) a party initiates a lawsuit in anticipation of an action that party believes is about to be filed against him, (2) with the motive of denying the "real" plaintiff his choice of forum, and (3) the "real" plaintiff subsequently files a suit involving the same parties and issues, courts generally have dismissed the first action in favor of the second. In this case, however, Defendants have failed to establish that National Union acted with an improper motive in filing the federal court action. It appears that National Union and Defendants had argued their respective positions in correspondence to one another for some months. An examination of the correspondence reveals that Defendants were informed of National Union's intention to deny coverage long before the initiation of the federal court suit. One letter to Defendants' counsel, dated August 20, 1991, states that "[a]fter careful consideration of [Texaco's] request [that National Union defend Texaco], the insurance policy, indemnity agreement and the pleading in the above-referenced action, National Union Fire Insurance Company of Pittsburgh, Pa. has determined that it has no obligation to either defend or indemnify Texaco Refining & Marketing, Inc. in this matter...." This decision on the part of National Union is reiterated in subsequent correspondence between the parties. Defendants, it appears, were still writing letters to National Union in an attempt to persuade the insurer to acknowledge coverage, but such should not prevent National Union from acting to obtain a declaratory judgment in a proper forum.

The fact that Defendants were advised of National Union's intent to deny coverage, at least as to one of the four personal injury claims, more than seven months before National Union's institution of the federal court action, leads this Court to reject Defendants' characterization of the federal court suit as a "race to the courthouse" in which National Union attempted to preempt Defendants' choice of forum "before the defendants had a reasonable opportunity to file a state court suit." Defendants' reliance upon *Granite State*, in which the federal court Plaintiff brought suit even before informing Defendant of its intent to deny coverage, is unfounded.

The *Colorado River* court indicated that a federal court may also consider, as part of the fourth-factor inquiry, the absence of progress in the federal court litigation. In

this regard Defendants assert that "this federal suit has not passed beyond the stage of Rule 12 motions....," and again cite this Court's holding in *Granite State* as authority that the action should be dismissed. Again, however, Defendants' analogy is inapposite. Important to the court's decision to dismiss in *Granite State* was its finding that "[t]he defendants have not taken any action before this Court other than to file an answer, the instant motion, and related briefs, and [plaintiff] has merely filed its complaint and response to the defendants' motion." 762 F.Supp. at 160. In contrast, and contrary to Defendants' suggestion that this suit remains in its preliminary stages, the parties in the present case have exchanged three (3) sets of discovery, a scheduling conference has been held at which discovery deadlines and a Docket Call date were set, Plaintiff has filed a fully dispositive motion for summary judgment and brief in support thereof, Defendants have filed their opposition to summary judgment supported by a lengthy brief, Plaintiff has filed its rebuttal to Defendants' brief, Defendants have filed a motion to transfer and brief in support, two motions for leave to file amended answers, and most recently a motion to defer ruling on Plaintiff's Motion for Summary Judgment. In light of the marked progress of this case on the merits, and extensive pretrial work already completed by the parties, it is the opinion of the Court that the fourth factor weighs in favor of this Court's retention of jurisdiction.

The fifth consideration articulated in *Colorado River*, the applicability of federal or state law to the merits of the claim at issue, favors neither the exercise nor the declination of jurisdiction by this Court. National Union's complaint in the federal action, involving the construction of an insurance policy, does not implicate any important state or federal interests. Because a federal court sitting in diversity is equally as capable as a state tribunal at entertaining a breach of contract dispute between private parties, the fifth *Colorado River* factor does not weigh heavily in the Court's decision.

The sixth and final factor to be considered, the adequacy of the state court proceedings to protect the rights of the party that invoked the federal court's jurisdiction, "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston Ins. Co.*, 844 F.2d at 1193. This Court is confident that the 172nd Judicial District Court of Jefferson County, Texas, and the distinguished judge of that court, would fully respect and protect the rights of all parties, including National Union, in the second filed case pending in that court. This factor, therefore, adds no weight at all in support of this Court's retention of jurisdiction. In short, the sixth factor is simply a neutral, or irrelevant consideration.

Considering all of the relevant *Colorado River* factors as a whole, and in view of the foregoing analyses of each individual factor, the Court concludes that this case is not one of "exceptional circumstances" such as to oblige this court to abstain from fulfilling its duty to exercise its properly invoked jurisdiction.

### III. Order

For the foregoing reasons, Defendants Texaco Refining & Marketing, Inc.'s and Star Enterprises, Inc.'s Motion to Dismiss, or in the Alternative, to Abate or Abstain is DENIED.