DVI BUSINESS CREDIT
CORPORATION,
Plaintiff,

v.

Walter F. CROWDER,
et al., Defendants.

No. Civ.A. G–02–114.

United States District Court,
S.D. Texas,
Galveston Division.

April 9, 2002.

---

Andrew J. Mytelka, Greer Herz & Adams, Galveston, TX, James E. Golden, Pierce Couch, Hendrickson Baysinger & Green LLP, Oklahoma City, OK, for DVI Business Credit Corporation, a Delaware corporation, plaintiff.

Philip Howard Roberts, Mabry Herbeck and Chilton, Texas City, TX, James Richard Watkins, Royston Rayzor, Vickery & Williams LLP, Galveston, TX, John H. Cochran, Cochran & Cochran, Dallas, TX,

for Walter F. Crowder, an individual, defendant.

### ORDER DENYING DEFENDANTS' MOTION TO ABSTAIN, DENYING DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT AND DENYING DEFENDANTS' MOTION TO QUASH AS MOOT

KENT, District Judge.

Plaintiff DVI Business Credit Corporation ("DVI") brings this diversity action seeking injunctive relief and damages from Defendants Walter F. Crowder ("Crowder"), Nurses to Go, Inc. ("NTG"), Mississippi Regional Home Health of San Antonio, Inc. d/b/a Continued Care Home Health ("MRHH"), Ultra Staff Home Health Services, Inc. d/b/a Amed Home Heath ("Ultra Staff") and Tejas Quality Home Health Care, Inc. ("Tejas") pursuant to the state laws of Texas. On March 11, 2002, Defendants filed a Motion to Abstain, Motion for More Definite Statement and a Motion to Quash Service. After considering these Motions, DVI's Responses thereto, the relevant evidence and the applicable law, the Court hereby concludes that all three Motions must be **DENIED.**

### I.

Defendants NTG, MHH, Ultra Staff and Tejas (collectively "Corporate Defendants") are Medicare service providers who administer home health care to Texas residents. At various times during 1999, each Corporate Defendant entered into a "bridge funding" arrangement ("Funding Agreement") with MedCapital I Funding Corporation ("MedCap") by which MedCap agreed to advance a loan to the Corporate Defendants for each of their receivables, less a discount. This revolving loan system was designed to ensure that the Corporate Defendants received prompt payment for their services. Basically, the system prevented cash flow problems that the Corporate Defendants would have otherwise encountered while waiting for direct reimbursement by Medicare.

Pursuant to the Funding Agreements, when the Corporate Defendants collected payments from Medicare, such sums were deposited in designated bank accounts ("Trust Accounts") and held in trust for MedCap. The Corporate Defendants authorized MedCap to "sweep" the Trust Accounts periodically, for the purpose of electronically transferring the net collections to MedCap in repayment for the bridge funding loans. As security for these loans, MedCap retained a security interest in all of the Corporate Defendants' receivables. In addition, Crowder, as president of all four Corporate Defendants, personally guaranteed all loan advances.

At the same time that they executed the Funding Agreements with MedCap, the Corporate Defendants entered in to contracts ("Service Contracts") with MedCare Financial Solutions, Inc. ("MFS") for financial management services associated with the revolving loan system. During 1999, the Corporate Defendants, MedCap and MFS fully performed their respective contractual obligations. Things changed in 2000, however, when it became apparent that Medicare was going to change its cost reimbursement system to a prospective payment system. Under this new system, Medicare would pay one half the cost of health care services in advance, rather than reimbursing health service providers for the full cost of a service subsequent to treatment. Clearly, the prospective payment system reduced, and possibly eliminated, the Corporate Defendants' need for the services provided by MedCap and MFS.

During the course of 2001, the agreements in place between the Corporate Defendants, MedCap and MFS were once again dramatically affected by several ad-

ditional events. First, a lender named Elk Omega, Inc. ("Elk Omega") foreclosed on loans that it had apparently extended to MFS and MedCap in the past. Secondly, MedCap and MFS assigned their rights under the Funding Agreements to DVI. And finally, MedCap and MFS filed for bankruptcy in the United States District Court for the Northern District of Texas.

Shortly before the bankruptcy filings, each Corporate Defendant filed a separate suit against MFS and MedCap in Texas state court,[1] alleging the following scenario: Directly prior to Medicare's adoption of the prospective payment system, MFS began to reduce its staff and services. However, MFS continued to bill its clients as if no changes had taken place. Thus, the Corporate Defendants were billed for services that MFS was no longer providing. Moreover, MedCap continued to charge interest on sums of money that it had not actually advanced to the Corporate Defendants as bridge funds. In an attempt to end this alleged "ghost billing," the Corporate Defendants attempted to cancel the Funding Agreements and Service Contracts. When those efforts failed, the Corporate Defendants notified MedCap and MFS that the Funding Agreements and Service Contracts would be terminated in May of 2001. The Parties mutually agreed to extend this termination date by several months, but failed to independently resolve their dispute over the "ghost charges."

The Corporate Defendants subsequently amended their Petitions in each of the four state court lawsuits, adding DVI and Elk Omega as Defendants. These lawsuits are presently stayed, however, pursuant to the automatic stay provisions of the Bankruptcy Code. The instant suit was filed in this Court by DVI on February 15, 2002. In its First Amended Complaint, DVI asserts four causes of action against Crowder and the Corporate Defendants: (1) breach of contract; (2) breach of fiduciary duty; (3) conversion; and (4) breach of personal guaranty agreement.[2] On March 11, 2002, Defendants filed the instant Motions—a Motion to Abstain pursuant to the *Burford* or *Colorado River* abstention doctrines, a Motion for More Definite Statement and a Motion to Quash. The Court will now address each of these Motions in turn.

## II.

■ The duty of federal courts to exercise the jurisdiction conferred upon them by Congress is extremely inflexible, but not absolute. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 1720–21, 135 L.Ed.2d 1 (1996). Indeed, "in exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest," a federal court may abstain from hearing a matter that has been brought to its attention. *Id.* (internal citations omitted). In this case, Defendants request that the Court abstain from hearing DVI's claims pursuant to the abstention doctrine developed by the Supreme Court in *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or, in the alternative, pursuant

---

**1.** Ultra Staff filed suit against MedCap and MFS on December 11, 2001 in Galveston County, Texas. Tejas filed suit against MedCap and MFS on December 12, 2001 in Bexar County, Texas. NTG filed suit against MedCap and MFS on December 12, 2001 in Travis County, Texas. MHRR filed suit against MedCap and MFS on December 13, 2001 in Uvalde County, Texas.

**2.** In its Complaint, DVI makes no mention of MedCap or MFS whatsoever. Rather, DVI bases its claims solely on allegations that, on or about December 12, 2001, Defendants changed the electronic funds transfer designation of the Trust Accounts and, by doing so, diverted receivables that were the property of DVI to themselves in contravention of DVI's alleged security interest in those sums.

to the abstention doctrine set forth in a later case, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[3] However, as discussed below, the precise facts of this case do not warrant the application of either form of abstention by the Court.

### The Burford Doctrine

Federal courts employ the *Burford* abstention doctrine to avoid "delay, misunderstanding of local law, and needless federal conflict with the state policy."[4] *Hurst v. Regis Low, Ltd.*, 878 F.Supp. 981, 983 (S.D.Tex.1995) (citing *Burford.*, 319 U.S. at 327, 63 S.Ct. at 1104). The Supreme Court summarized this doctrine in *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989), stating: "Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *New Orleans Public Serv.*, 491 U.S. at 361, 109 S.Ct. at 2514 (citing *Colorado River*, 424 U.S. at 813–14, 96 S.Ct. at 1244). While the *Burford* doctrine is generally applied in cases involving state administrative orders or proceedings, the "difficult questions of state law" contemplated by the doctrine may also arise in cases involving state judicial proceedings. *See, e.g. Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 2216, 119 L.Ed.2d 468 (1992) (stating that there are circumstances in which *Burford* abstention might be appropriate prior to the effectuation of a state decree in a domestic-relations matter); *Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 594, 88 S.Ct. 1753, 1754, 20 L.Ed.2d 835 (1968) (ordering abstention so that state court could decide a novel question of state water law); *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 30,

---

**3.** At the outset, the Court observes that Defendants erroneously characterize their Motion to Abstain as a Rule 12(b)(6) Motion to Dismiss. Such characterization is inaccurate because, while Fed.R.Civ.P. 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted, it is not a vehicle for dismissal on abstention grounds. *See* Fed. R.Civ.P. 12(b)(6). Furthermore, the Court notes that dismissal pursuant to either abstention doctrine would be improper in this case because DVI is seeking damages. *See Quackenbush*, 517 U.S. at 730, 116 S.Ct. at 1728 (explaining that, in an action for damages, a Court cannot abstain from exercising jurisdiction; rather, it can only stay the litigation). As such, if the Court were abstain from hearing this matter, the action would be stayed— but not dismissed. Thus, the Court views Defendants' instant Motion as a Motion to Abstain pursuant to the *Burford* and *Colorado River* doctrines, rather than as a Rule 12(b)(6) Motion to Dismiss.

**4.** In the *Burford* case, the Sun Oil company filed a lawsuit in federal court seeking to enjoin an order by the Texas Railroad Commission granting Burford a permit to drill several oil wells. The sole issue before the court was whether the Commission had denied Sun Oil due process by applying its oil and gas regulations improperly. After observing that (1) the lawsuit involved highly technical and complicated regulatory issues that affected the state-wide oil and gas conservation system, *see Burford*, 319 U.S. at 320–24, 63 S.Ct. at 1101–02, and (2) Texas had created a comprehensive centralized system for judicial review of the Commission's orders, the Supreme Court ultimately decided that abstention was proper to safeguard the state's administrative process from undue federal influence. *See id.* at 332–33, 63 S.Ct. at 1107.

79 S.Ct. 1070, 1074, 3 L.Ed.2d 1058 (1959) (ordering abstention so that state court could have an opportunity to construe the state condemnation statute in question). In any event, federal courts must remain mindful that the *Burford* doctrine "does not require abstention ... in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Public Serv.*, 491 U.S. at 362, 109 S.Ct. at 2515 (citing *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. at 1245). In practice, the considerations underlying the *Burford* doctrine seldom favor abstention. *Quackenbush*, 517 U.S. at 731, 116 S.Ct. at 1728.

 In deciding whether *Burford* abstention is proper, this Court must consider (1) whether the Court itself is lacking in experience in the matter but a state court with such knowledge is present; (2) if a strong state policy is at stake; and (3) whether duplicative litigation might ensue if the Court retains jurisdiction over the case. *See Hurst*, 878 F.Supp. at 983 (citing *Burford*, 319 U.S. at 327, 63 S.Ct. at 1104). None of these concerns exist in the instant action. First, DVI's claims do not involve a novel or complicated question of state law or seek interference with any state law system. Rather, DVI's claims implicate well-settled state contract and tort law, nothing more. Next, no strong state policies are at stake.[5] Finally, the Court does not find that its exercise of jurisdiction over this matter will result in duplicative litigation. Rather, the opposite is true. Because the state actions involving the Parties to this lawsuit are presently stayed, a prompt resolution of DVI's claims by this Court will most likely eliminate the need for the state courts to resolve several of the overlapping issues later. Therefore, unlike the situations in which *Burford* abstention is appropriate, this Court's exercise of federal jurisdiction over this case would not have a far-reaching effect on the state's administrative or judicial procedures, disrupt any state policy or measurably reduce the possibility of duplicative litigation. Simply put, adopting the *Burford* doctrine in this case would certainly prove to be in error. Accordingly, Defendants' Motion to Abstain pursuant to the *Burford* doctrine is hereby **DENIED.**

### The Colorado River Doctrine

Defendants also request that this Court abstain from hearing this action pursuant to the *Colorado River* doctrine.[6] This type of abstention arises from principles of federalism, comity and conservation of judicial resources. *See Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir.1988). As with *Burford* abstention, *Colorado River* abstention likewise represents an "extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 821, 96 S.Ct. at 1248.

---

5. Defendants argue that this lawsuit involves a state policy of "protecting the citizenry of Texas from usurious interest charges." The Court fails to comprehend how this policy is implicated, however, because DVI's Complaint includes no mention of usury whatsoever.

6. In *Colorado River*, the United States brought suit in federal court, on its own behalf and on behalf of two Indian tribes, seeking a declaration of its rights to waters in certain rivers and their tributaries located in a Colorado water division. *See Colorado River*, 424 U.S. at 805, 96 S.Ct. at 1240. After emphasizing its desire to further the policy of the McCarran Amendment—which recognizes the desirability of state, rather than federal, systems for the unified adjudication and management of water rights—the Supreme Court decided that abstention was necessary to prevent duplication of pending state proceedings. *See id.* at 819–21, 96 S.Ct. at 1247–48.

The Supreme Court has not prescribed a bright-line rule governing the appropriateness of *Colorado River* abstention, but it has set forth six factors that may be considered and weighed in deciding whether the "exceptional circumstances" required for such abstention exist. *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir.2000). The first four of these factors, set forth in *Colorado River*, are: (1) assumption by either court over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; and (4) the order in which jurisdiction in which was obtained by the concurrent forums. *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 589 (5th Cir.1994). The other two factors, added to the list by the Supreme Court in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), are: (1) whether federal law provides the rule of decision; and (2) whether the state court proceedings are inadequate to protect the federal plaintiff's rights.[7] *Id.* at 15–17, 103 S.Ct. at 937. A Court's decision to abstain under *Colorado River* must not depend upon "a mechanical checklist, but upon a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 15–17, 103 S.Ct. at 937.

In considering the factors governing the *Colorado River/Moses Cone* "exceptional circumstances" test, the Court concludes that abstention in this lawsuit is unwarranted. First, the Parties are in agreement that none of the state courts in which the related suits are pending have assumed jurisdiction over any property. Thus, "the absence of this factor weighs

against abstention." *Parfait v. Nabors Offshore Drilling, Inc.*, 46 F.Supp.2d 677, 679 (S.D.Tex.1999). As to the second factor, "inconvenience of the federal forum," the Fifth Circuit has stated that the primary focus of this factor is on "physical proximity of the federal forum to the evidence and witnesses." *Abell Corp. v. Indus. Risk Insurers*, 896 F.Supp. 598, 600 (E.D.La.1995) (quoting *Evanston*, 844 at 1191). Given that Crowder resides in Galveston County, the Corporate Defendants are headquartered in Galveston County and one of the state court lawsuits at issue was filed in a Galveston County state court, the Court finds it inconceivable that Galveston is any more inconvenient a forum than the state courts for Defendants. As such, the inconvenience of this forum is not "so great that this factor points towards abstention." *Parfait*, 46 F.Supp.2d at 679. Next, because no court has assumed jurisdiction over disputed property, this Court's exercise of jurisdiction will not cause piecemeal litigation. *See Evanston*, 844 F.2d at 1191 (explaining that, where there is no danger of inconsistent rulings affecting property ownership, the avoidance of piecemeal litigation does not weigh in favor of abstention).

When contemplating the fourth *Colorado River* factor—the order in which jurisdiction was obtained—the key consideration is not which action was filed first; but rather, how far each action has progressed towards trial. *See Parfait*, 46 F.Supp.2d at 680. In the instant suit, because of the MedCap and MFS bankruptcies, the relevant state court actions have experienced relatively little, if any, progress towards trial. Conversely, the Parties to this action have already begun

---

7. Unlike the first four factors, these two factors were not added as considerations weighing against a Court's decision to retain jurisdiction over a case. *See St. Paul*, 39 F.3d at

589 n. 4. Rather, factors five and six provide additional reasons to support a Court's retention of jurisdiction. *See Moses Cone*, 460 U.S. at 25–26, 103 S.Ct. at 942.

discovery and attended a preliminary injunction hearing. Accordingly, this factor weighs against abstention. Next, while the presence of a federal law issue is a major consideration weighing against abstention, the presence of state law issues weighs in favor of abstention only in "rare circumstances." *Evanston*, 844 F.2d at 1193. Defendants have not shown—and this Court does not find—that rare circumstances exist here such the relevant questions of state law are so complex as to require decision by the state courts. *See Am. Bankers Ins. Co. of Florida v. First State Ins. Co.*, 891 F.2d 882, 886 (11th Cir.1990). And although there is no evidence suggesting that Defendants would not receive adequate protection in state court, "this factor can never favor abstention; at best, it can only be neutral." *Parfait*, 46 F.Supp.2d at 680; *see also Noonan South Inc. v. County of Volusia*, 841 F.2d 380, 383 (11th Cir.1988) (explaining that "the fact that both forums are adequate to protect the parties' rights merely renders this factor neutral"). The Court therefore concludes that the relevant factors weigh heavily against the application of *Colorado River* type abstention. Accordingly, Defendants' Motion to Abstain pursuant to the *Colorado River* doctrine is hereby **DENIED.**

### III.

Turning now to Defendants' Motion for a More Definite Statement, the Court observes that the Federal Rules of Civil Procedure do not contemplate the pleading of facts in great detail. *See Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir.1959) ("In view of the great liberality of Fed.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss."). Consequently, Rule 12(e) Motions are disfavored in the federal system. *See Nebout v. City of Hitchcock*, 71 F.Supp.2d 702, 706 (S.D.Tex.1999). However, a district court will grant a Rule 12(e) motion for a more definite statement when the pleading at issue "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). In deciding whether to grant such a motion, the trial judge is given considerable discretion. *See Newcourt Leasing Corp. v. Regional Bio–Clinical Lab, Inc.*, 2000 WL 134700, at *1 (E.D.La. Feb.1, 2000).

■ Defendants ask that DVI be compelled to identify precisely how "it acquired an interest in this matter" by providing details of the alleged assignment of lender's rights and obligations to DVI by the now-bankrupt entities. For instance, the Corporate Defendants seek information regarding "where such assignment might be located" and identifying specific payments made by DVI. Such facts, however, can be developed during discovery. While DVI has not provided specific details with respect to its allegations, its Complaint does provide an adequate description of the revolving loan system and DVI's security interest in the Corporate Defendants' receivables made the basis of its claims. Moreover, the fact that Defendants have sued DVI in state court suggests that Defendants are well aware that DVI has an interest in this lawsuit. Accordingly, the Court finds that DVI's Complaint is not so vague as to prevent Defendants from framing a responsive pleading. Defendants' Motion for a More Definite Statement is therefore **DENIED.**

### IV.

Defendants also request that the Court quash each summon served upon them by DVI on February 19, 2002, on the basis that such service was not effectuated in

accordance with Fed.R.Civ.P. 4. The Court need not reach the issue of whether service was valid, however, because DVI reissued each summons and served Defendants as required on March 19, 2002. Given that each Defendant has now been served properly, Defendants' Motion to Quash is hereby **DENIED** as moot.

**IT IS SO ORDERED**