**SAFETY NATIONAL CASUALTY CORP.,**

v.

**BRISTOL–MYERS SQUIBB COMPANY, et al.**

No. 1:98–CV–1571.

United States District Court,
E.D. Texas,
Beaumont Division.

March 29, 1999.

Gary Neale Reger, Howard Louis Close, Orgain Bell & Tucker LLP, Beaumont, TX, Andrew T. Berry, Thomas W. Ladd, Arnold L. Natali, Jr., McCarter & English, Newark, NJ, for Safety National Casualty Corporation, plaintiff.

Robert Quentin Keith, Amy Keith, Thomas Hugh Walston, Keith & Weber PC, Johnson City, TX, Andrew T. Berry, McCarter & English, Newark, NJ, for Bristol Myers Squibb Company, Medical Engineering Corp., defendants.

*MEMORANDUM OPINION ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND OVERRULING PLAINTIFF'S OBJECTIONS*

HEARTFIELD, District Judge.

Pending is defendants' motion to dismiss or abate this action, or, alternatively to consolidate it with Case No:1:98–CV–1564. Pursuant to 28 U.S.C. § 636(b), this motion was referred to United States Magistrate Judge Earl S. Hines for conclusions of law and recommendation for disposition. On March 9, 1999, the magistrate judge issued a report recommending that defendants' motion to stay this action be granted.

The court has received and considered the Report and Recommendation of the United States Magistrate Judge, along with the record in this matter. Plaintiff timely filed objections to this report on March 23, 1999. This requires a *de novo* review of the specific portions of the report to which objections have been made. *See* FED.R.CIV.P. 72(b).

In its objection, Safety National Casualty Corporation ("SNC") raises the same arguments considered by the magistrate judge in his Report and Recommendation. SNC has not presented anything beyond perfunctory argument that the magistrate's findings and conclusions of law are incorrect. Independent review indicates that the magistrate judge's findings and legal conclusions are correct. As such, SNC's objection is without merit. Having considered this matter *de novo*, it is

ORDERED that the magistrate judge's report and recommendation is **ADOPTED** and plaintiff's objections are **OVERRULED**. A separate order will be entered in accordance with the magistrate judge's recommendations.

*REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTIONS TO ABATE, DISMISS OR CONSOLIDATE*

HINES, United States Magistrate Judge.

This action is referred to the undersigned United States magistrate judge for consideration of pretrial matters. (1:98–CV–1571 Dockt. No. 3). The referral order directs the magistrate judge to submit a report and recommendation regarding motions for injunctive relief, judgment on the pleadings, summary judgment and dismissal.[1] It directs the magistrate judge to determine all other pretrial motions.[2]

Before the court is a motion by defendants Bristol–Myers Squibb Company and its subsidiary, Medical Engineering Corporation, (collectively "BMS") to dismiss or abate this action (*"Bristol Myers II"*), or, alternatively to consolidate it with Case No:1:98–CV–1564 (*"Bristol Myers I"*). This report addresses that motion.

## I. Background

Plaintiff, Safety National Casualty Corporation ("SNC"), and BMS are adverse litigants in a separate dispute involving insurance coverage.[3] The nature and history of that dispute are recounted in a separate report.[4] For present purposes, it

---

1. *See* 28 U.S.C. § 636(b) (1994); Local Rules for Assignment of Duties to Magistrate Judges.

2. *Id.*

3. On March 19, 1993, Bristol–Myers Squibb Company and Medical Engineering Corporation ("MEC") instituted suit in the 58th Judicial District Court of Jefferson County, Texas. (Cause No. A–0145672, State Court Civil Dockt. Sheet at 1.) Defendants were SNC and many other companies that, like SNC, issued liability insurance policies to BMS.

4. *See Bristol–Myers Squibb Co. v. Safety Nat'l Casualty Co.,* No.1:98–CV–1564 (E.D.Tex. 1999) (Magistrate Judge's Report & Recommendation). BMS alleged that it was a defendant in more than 2,500 personal injury suits brought by consumers who used silicone breast implant products manufactured or marketed by BMS. *See id.* (Original Pet. ¶ 90.) Further, BMS alleged it purchased liability insurance from defendants who refused to defend BMS in those personal injury suits, and further refused to pay or indemnify BMS

suffices to say that BMS sued SNC and other insurers in a Texas court in 1993. In 1998, SNC removed the action to this federal court when BMS filed its thirteenth amended petition and dismissed a non-diverse defendant. The only remaining litigants, SNC asserted, had diverse citizenship, thus providing a basis for federal diversity jurisdiction.

Six days after the insurance coverage dispute was removed to federal court, SNC instituted a separate action, the instant suit, against BMS. SNC, again basing jurisdiction on diversity of citizenship, sues for a "declaration of its rights and obligations under a Standstill agreement." [5] Specifically, SNC seeks declaratory judgment providing *inter alia* that because of the Standstill Agreement: (1) SNC is entitled under 9 U.S.C. § 3 to a stay of all proceedings against it by BMS until arbitration has been completed; (2) BMS has released SNC from all claims with the exception of those covered by arbitration

agreements; and, (3) any dispute arising out of SNC policies must be submitted to a board of arbitration.

## II. Motion to Dismiss, Abate or Consolidate

BMS moves to dismiss or abate this action. In the alternative, defendant moves to consolidate this action with the removed insurance coverage case and remand them both to the original state court.[6]

BMS argues that because the instant federal suit seeks declaratory judgment involving the same parties, facts, subject matter and legal issues as a case previously filed in state court, the federal court should abstain. Essentially, BMS contends that entertainment of a federal declaratory judgment suit under such circumstances would provide SNC an end run around the state court. Principles of comity and federalism would be violated, as well as the Anti–Injunction Act.[7]

---

for liability that might be imposed in those actions. *See id.* (Original Pet. ¶¶ 114, 115.) BMS sought declaratory judgment that the breast implant suits were "occurrences" within the meaning of the various insurance policies and that the insurers' failure to defend and indemnify were breaches of their obligations under the insurance contracts. *See id.* (Original Pet. ¶¶ 104, 107.) BMS also sought monetary damages for all damages, costs and payments they incurred as a result of the breast implant litigation. *See id.* (Original Pet. ¶ 116.)

5. After the state court insurance coverage was pending for over two years, BMS and SNC entered a "Standstill Agreement" that effectively put on hold the dispute between BMS and SNC. (Compl.Ex. 4.) The July 26, 1995, agreement recounted that various lawsuits involving coverage-related disputes were pending in Texas, New Jersey, Missouri and in another forum identified only as "Index No. 93/1200948." (*Id.* at 1, 2) It recited that BMS and SNC determined that it was in their mutual interest to hold all coverage-related disputes between and among them in "abeyance," and to "defer and possibly avoid" the need to litigate. (*Id.* at 2.)

The Standstill Agreement infers, without expressly providing, that upon entry of final judgment in the Texas court disposing of all

claims against all other defendants, BMS or SNC could compel the other to arbitrate.

BMS and SNC agreed to dismiss without prejudice their respective and sundry actions pending in various courts. (*Id.* at 2, 3.) BMS reserved the right to again initiate litigation if SNC attempted to rescind the insurance policies in question, while SNC reserved the right to claim any such dispute to be subject to mandatory arbitration. (*Id.*) Finally, both parties agreed to suspend operation of relevant statutes of limitations and similar equitable time-based defenses. (*Id.* at 4.)

6. By separate report, the undersigned recommended that *Bristol–Myers I* be remanded for lack of subject matter jurisdiction, and that the motion to consolidate be denied as moot. *See Bristol–Myers Squibb Co. v. Safety Nat'l Casualty Co.*, No.1:98–CV–1564 (E.D.Tex. 1999) (Magistrate Judge's Report & Recommendation).

7. 28 U.S.C. section 2283 states:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction or to protect or effectuate its judgments.

28 U.S.C. § 2283 (1994).

In response, plaintiff, SNC, contends, first, that *Bristol–Myers I* was removed to federal court on April 24, 1998, and thus no state court proceeding was pending at the time SNC filed *Bristol–Myers II* on April 30, 1998. Nor is a parallel state case pending now. Second, SNC argues that pendency of a state court action is no bar to proceedings concerning the same matter in the federal court having jurisdiction. SNC contends that even in that circumstance, abstention is a rare exception, not a general rule. Finally, SNC contends that section 4 of the United States Arbitration Act[8] establishes strong federal policy for rapid and unobstructed enforcement of arbitration agreements. Thus, there should be no abstention absent exceptional circumstances revealing that ordering the parties to state court would clearly serve an important-countervailing interest of wise judicial administration.

### III. Abstention

 Under the American system of concurrent jurisdiction of federal and state courts,[9] federal courts inevitably are asked to yield their jurisdiction based on the underlying rationale that state tribunals are more appropriate to hear and decide particular suits. The fundamental interests that underlie abstention doctrines are interests of comity and federalism. *See Chemical Bank v. City of Bandon*, 562 F.Supp. 704, 706 (D.Or.1983). *See also* 17 J. MOORE, B. WARD, & J. LUCAS, MOORE'S

FEDERAL PRACTICE § 122.01[3], p. 122–10 (1998). Thus, abstention is appropriate to avoid friction between federal and state courts, reduce the likelihood that a federal court will erroneously interpret state law, and avoid unnecessary constitutional rulings.[10]

Otherwise, federal courts generally have a "virtual unflagging obligation … to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (quoting *McClellan v. Carland*, 217 U.S. 268, 283, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910)). The analysis in *Colorado River* began as follows:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which the District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the *exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.*

*Colorado River Water Conservation Dist.*, 424 U.S. at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda*

---

8. 28 U.S.C. section 2201(a) provides:

> In a case or controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
> 28 U.S.C. § 2201(a).

9. Federal jurisdiction under 28 U.S.C. § 1331 (1998) is usually deemed to be concurrent with that of the state courts. *See, e.g., Charles Dowd Box Co.*, 368 U.S. 502, 507–08, 82 S.Ct. 519 522, 523, 7 L.Ed.2d 483 (1962); *Claflin v. Houseman*, 93 U.S. 130, 136, 3 Otto 130, 23 L.Ed. 833 (1876).

10. The *Pullman* doctrine requires federal abstention if a state court determination of an unsettled state law question would avoid resolution of a federal constitutional issue. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941) The *Thibodaux* abstention requires a federal court to abstain in diversity cases involving unclear state law. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). The *Burford* abstention requires a federal court to defer to state courts when the litigation involves a complex state administrative statutory scheme. *Burford v. Sun Oil Co.*, 319 U.S. 315, 325–327, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

*Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)) (emphasis added).

The Supreme Court clearly stated that " 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' " *Id.* at 817, 96 S.Ct. 1236. Nevertheless, *Colorado River* acknowledged that "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' " may constitute an exceptional circumstance sufficient to warrant abstention. *Id.* at 817, 96 S.Ct. 1236. The court declined to prescribe a hard and fast rule, but described relevant factors and made clear that the balance was to be heavily weighted in favor of exercising jurisdiction. *Id.* at 818–819, 96 S.Ct. 1236.

The *Colorado River* "exceptional circumstances" doctrine applies to a federal diversity-of-citizenship action seeking an order compelling arbitration of a construction dispute under section four of the United States Arbitration Act. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The federal action was filed subsequent to a parallel state court action. However, the court concluded that in light of strong federal policy for rapid and unobstructed enforcement of arbitration agreements, and lack of substantial progress in the state court parallel action, there was no exceptional circumstance justifying a stay of the federal action on the basis of wise judicial administration.

A unanimous court subsequently concluded that the "exceptional circumstances" doctrine does not apply to a district court's decision to abstain from a federal declaratory judgment action involving an insurance coverage dispute. *See Wilton v. Seven Falls Company,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Supreme Court reasoned that the Federal Declaratory Judgment Act grants federal courts discretion in determining whether and when to entertain a declaratory judgment action in the first place, even when the suit otherwise satisfies subject matter jurisdiction.[11] Thus, district courts should have greater abstention discretion in declaratory judgment actions than is permitted under the "exceptional circumstances" test of *Colorado River* and *Moses H. Cone.*

The Court concluded that the scope of the district court's discretion was at least as broad and general as when determining whether to entertain the action at all. That discretion was stated in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). The Court found that the question for a district court presented with a suit under the Declaratory Judgment Act is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* at 495, 62 S.Ct. at 1175–1176.

### IV. Analysis

The instant suit is similar to *Moses H. Cone* in that it seeks to compel arbitration. However, it also is similar to *Wilton* in that it is a declaratory judgment action and originates from an insurance coverage dispute. The question arises, therefore, whether the stringent exceptional circumstances test of *Colorado River* and *Moses H. Cone* or the more lenient *Brillhart/Wilton* standard applies. Since this is a novel question, prudence dictates that the issue be addressed under both tests. Only if the result differs will there be a need to make the difficult choice.

### A. Parallel State Court Proceeding

SNC correctly argues that no parallel state court proceeding currently exists, nor did one exist at the time this suit was

11. *See* 28 U.S.C. § 2201(a).

filed. The purported parallel state proceeding, *Bristol–Myers I*, was removed to this court before the instant declaratory judgment suit was filed.

The undersigned has determined, however, that removal of *Bristol Myers I* was improper, and has recommended that the action be remanded for lack of subject matter jurisdiction.[12] If *Bristol Myers I* is remanded, there will then be a parallel state proceeding. For analytical purposes, that proceeding will be regarded as though it had never been removed.[13]

**B. Declaratory Judgment Analysis**

■ In the Fifth Circuit, abstention is favored when declaratory judgment actions are at issue. *See Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 504–05 (5th Cir.1988) (*en banc*). The holding in *Jackson* is restated in *Travelers Ins. Co. v. Louisiana Farm Bureau Fed. Inc.*, 996 F.2d 774, 776 (5th Cir.1993), as follows:

> [W]hen a state lawsuit is pending, more often than not, issuing a [federal] declaratory judgment will be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti–Injunction Act.... Thus, as a general rule, the district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti–Injunction Act.... The Court has found that the issuance of a declaratory judgment in such situations would be antithetical to the noble principles of federalism and comity.

*Travelers Ins. Co.*, 996 F.2d 774, 776 (5th Cir.1993) (citations and footnotes omitted). Thus, this court has broad discretion over whether to decide or dismiss a declaratory judgment action. *See Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94 (5th Cir. 1992) *cert. dismissed*, 507 U.S. 1026, 113 S.Ct. 1836, 123 L.Ed.2d 463 (1993).

■ Here, BMS, the declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, SNC. Moreover, the pending state court action involves the same issues involving an SNC insurance policy as those involved in the instant federal case. Further, because Congress has not expressly authorized a stay of an action alike to the instant state court suit, the court is without authority to enjoin the state court proceedings. Under these circumstances, and in light of Fifth Circuit precedent, the court is free to conclude that the controversy between the parties to the instant suit can better be settled in the proceeding pending in state court.

**C. *Colorado River/Moses H. Cone Analysis***

Although couched in terms of a declaratory judgment action, the gravamen of SNC's suit is to resolve the issue of arbitrability in the insurance coverage dispute. SNC invokes the Federal Arbitration Act that delineates Congress's clear intent to move parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.[14] The Supreme Court in *Moses H. Cone* declared that the *Colorado River* "exceptional circumstances" test governs a district court's abstention deliberations in suits to compel arbitration.

*Colorado River* deference to state court proceedings rests on "considerations of

---

**12.** *See Bristol Myers Squibb Co. v. Safety Nat'l Casualty Co.*, No.1:98–CV–1564 (E.D.Tex. 1999) (Magistrate Judge's Report & Recommendation).

**13.** *See infra* note 17 and accompanying text.

**14.** The Federal Arbitration Act provides two procedural remedies for enforcing an arbitration agreement: (1) a stay of litigation raising a dispute referable to arbitration, 9 U.S.C. § 3, and (2) an affirmative order to engage in arbitration, 9 U.S.C. § 4.

'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). As noted, the Supreme Court listed a number of factors for the federal court to consider in assessing whether *Colorado River* deference is appropriate. No one factor is necessarily determinative. A carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors[15] counseling against that exercise is required. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

The relevant factors applied in *Moses H. Cone* are: (1) whether another court has assumed jurisdiction over the property; (2) whether the federal forum is inconvenient; (3) whether "piecemeal" litigation can be avoided; (4) the order in which jurisdiction was first obtained; (5) whether federal law provides the rule of decision; and,

(6) whether the state proceeding is adequate to protect the parties rights. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone*, 460 U.S. at 25–26, 103 S.Ct. 927.

 Applying these factors, there is no res because tangible physical property is not at issue.[16] Second, because the federal and state forums are in close proximity, they are equally convenient for parties and witnesses. Third, there is the danger of piecemeal litigation due to the various state issues relevant to interpretation and enforcement of the Standstill Agreement.[17] Fourth, the state court obtained jurisdiction first,[18] and made notable progress in resolving disputes between BMS, SNC and other insurers.[19] Fifth, the rule of decision regarding arbitrability is in doubt.[20] In any event, state law provides the rule of decision regarding equally important issues concerning enforcement of settlement agreements, dismissal of claims, and other procedural issues. Further, the state law procedural issues, if determined in SNC's favor, may moot the entire controversy.[21]

15. The factors relevant to a given case are to be subjected to a balancing test:
> [T]he decision whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

*Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

16. *See American Int'l Underwriters*, 843 F.2d at 1258 ("money . . . is not the sort of tangible physical property referred to in Colorado River").

17. *See id.* at 1258 (Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.").

18. When a federal case has been removed from state court, courts look to the date on which it was filed in state court rather than the date that the case was removed to federal court to determine the date on which the suit commenced. *See Igloo Products Corp. v. The*

*Mounties, Inc.*, 735 F.Supp. 214, 217 (S.D.Tex.1990).

19. At the time SNC filed Bristol–Myers II, litigation against over 70 defendants had been resolved. SNC was the only remaining defendant. Clearly, the degree of progress achieved in the state court action is notable.

20. The Federal Arbitration Act applies to maritime transactions and contracts evidencing transactions involving commerce. *See* 9 U.S.C. § 1 (1970). The Standstill Agreement was entered in the course of litigation. The parties have not cited judicial precedent regarding applicability of the Federal Arbitration Act to agreements entered as part of a settlement to litigation. The undersigned's independent research fails to disclose any authority on the subject.

21. Relying on *Trahan v. Roberts*, 48 S.W.2d 503, 506 (Tex.Civ.App.1932), SNC contends that BMS's thirteenth amended petition was an illegal attempt under state law to effect a wholesale substitution of defendants and therefore it must be struck. *See* Magistrate Judge's Report & Recommendation, Case No. 1:98CV1571, p. 720.

Finally, the state court proceedings are adequate to protect SNC's federal rights.[22] Thus, a balancing of factors tends to favor abstention.

Nevertheless, a balancing of the *Moses H. Cone* factors does not necessarily reveal the "exceptional circumstances" that *Colorado River* and *Moses H. Cone* require. What, then, is the exceptional circumstance, if any, that would propel this court to properly abstain in the interest of wise judicial administration?

What is exceptional here is that the Standstill Agreement was negotiated in the context of an alternative dispute resolution mechanism for ongoing state litigation. Wise judicial administration clearly favors abstention so that the state judge, under whose auspices and by whose leave the Standstill Agreement was entered and implemented, may ascertain what went wrong and determine appropriate remedies. Enforcement and interpretation of the Standstill Agreement by the state judge who presided when the agreement was entered also is preferable because both state law issues (contracts, release, enforcement of settlement agreements, procedural rules governing amendment of complaints and dismissal of defendants) and potential federal law issues (arbitrability) are presented.

The state judge who accepted the Standstill Agreement is familiar with all aspects of the dispute between the parties and the circumstances prevailing at the time it was entered. Further, the state judge is best positioned to understand the intent of the parties and should have the prerogative to determine in the first instance whether BMS may reinstitute its previously dismissed suit against SNC. If so, the state judge is well positioned to enforce the Standstill Agreement either under state or the Federal Arbitration Act.

## Conclusion

Abstention is a sound exercise of judicial discretion under both the lenient standards applicable to declaratory judgment actions and the "exceptional circumstances" standards applicable to suits to compel arbitration. When a federal court declines to exercise jurisdiction under *Colorado River*, it is more appropriate for the court to stay rather than dismiss the federal action. *Colorado River*, 424 U.S. at 818–819, 96 S.Ct. 1236 ("Only the clearest of justifications will warrant dismissal.") A stay of the litigation insures that the federal forum will remain open if, for some reason, the state forum proves unable to resolve the issues.

## Recommendation

The motion to stay this action should be granted.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R.CIV.P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir.1996) (*en banc*).

---

**22.** A federal court's jurisdiction to enforce the Arbitration Act is concurrent with that of state courts. *See* 9 U.S.C. § 2; *Moses H. Cone*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (stating that enforcement of the Federal Arbitration Act is also entrusted to state courts). Texas courts have the power to compel arbitration under section four of the Federal Arbitration Act if the Act's conditions are met. *See Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944–45 (Tex.1996).