REVISED – June 26, 2000

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 99-40531**

_____

**SAFETY NATIONAL CASUALTY CORPORATION,**

**Plaintiff-Appellant,**

**versus**

**BRISTOL-MYERS SQUIBB COMPANY; MEDICAL
ENGINEERING CORPORATION,**

**Defendants-Appellees.**

_____

**Appeal from the United States District Court
for the Eastern District of Texas**

_____

June 8, 2000

Before REAVLEY, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

At issue is the district court, in deference to a related Texas state court action, staying this action by Safety National Casualty Corporation, by which it seeks to compel arbitration with Bristol-Myers Squibb Company and Medical Engineering Corporation (collectively BMS). We **VACATE** and **REMAND**.

I.

The Texas state court action began in March 1993, when BMS sued Safety and more than 70 other insurers in its breast-implant coverage dispute. The three Safety policies at issue provide

"excess umbrella" coverage to BMS for "occurrences" between 30 June 1983 and 30 June 1984.

As one of its responses to that state court action, Safety filed an action in federal court in Missouri in April 1995. Safety's action sought, pursuant to a provision in its policies with BMS, to compel arbitration of its dispute with BMS, under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.

Shortly thereafter, in July 1995, Safety and BMS entered into a standstill agreement (SSA): BMS agreed to Safety being dismissed from the Texas state court action in return for Safety dismissing its Missouri federal court action. The Texas state court entered a non-suit order in February 1996.

By 1 April 1998, BMS had settled with all original defendants in the Texas state court action, except Safety and an insurer with a pending counterclaim. That day, BMS filed its "Thirteenth Amended Petition" in the Texas state court action, seeking a declaration that, under its policies with Safety, it has a duty to defend or indemnify BMS against breast implant claims (**Bristol I**).

On 24 April, having been brought back into the Texas state court action, Safety removed it, based on diversity. And, on 30 April, Safety filed in federal district court in Texas the action at hand (**Bristol II**). BMS' motion to remand the Texas state court action was granted on 29 March 1999, the same day as the stay order in issue in Safety's federal court action. **Bristol-Myers Squibb**

2

*Co. v. Safety Nat'l Cas. Corp.*, 43 F. Supp. 2d 734, 736-37 (E.D. Tex. 1999) (*Bristol I*).

In this action (*Bristol II*), Safety claims BMS breached the SSA by filing the 13th amended petition in *Bristol I*, and seeks, *inter alia*, (1) a declaratory judgment that the parties' disputes are arbitrable, pursuant to the policies; and (2) a stay of all litigation, pursuant to the FAA, 9 U.S.C. § 3.

BMS moved to dismiss in *Bristol II*, urging abstention in favor of the Texas state court action (*Bristol I*). The motion was referred to a magistrate judge for a report and recommendation. He recommended staying this action, based upon either the standard in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) (in action solely for declaratory (discretionary) relief, federal court's exercise of discretion to abstain is ordinarily appropriate), or in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (where, unlike declaratory relief, non-discretionary relief is sought, abstention is ordinarily *not* appropriate). Because he recommended that abstention was proper under either standard, the magistrate judge did *not* recommend which was applicable. *Bristol-Myers Squibb v. Safety Nat'l Cas. Corp.*, 43 F. Supp. 2d 713, 721 (E.D. Tex. 1999) (*Bristol II*).

Regarding **_Colorado River_** abstention, the magistrate judge recommended it was proper because

> there is the danger of piecemeal litigation due to the various state issues relevant to interpretation and enforcement of the [SSA;] .... the state court obtained jurisdiction first, and made notable progress in resolving disputes between BMS, [Safety] and other insurers[;] .... the rule of decision regarding arbitrability is in doubt ... [and] state law provides the rule of decision regarding equally important issues concerning enforcement of settlement agreements[;] .... [and] the state court proceedings are adequate to protect [Safety's] federal rights.

*Id.* at 720-21. The magistrate judge recommended further that: the parties' negotiation of the SSA "in the context of an alternative dispute resolution mechanism for ongoing state litigation" constituted "exceptional circumstances" justifying abstention, **_Colorado River_**, 424 U.S. at 813; and the state judge was "best positioned" to resolve their disputes. **_Bristol II_**, 43 F. Supp. 2d at 721.

Without a separate opinion, the district court overruled Safety's objections and adopted the stay recommendation. **_Id._** at 715.

## II.

As noted, Safety contests the district court's decision *not* to exercise its jurisdiction. We review its decision for abuse of discretion; its underlying legal conclusions, *de novo*. *See, e.g.,*

4

***Black Sea Inv., Ltd. v. United Heritage Corp.***, 204 F.3d 647, 649-50 (5th Cir. 2000).

Safety contends, and BMS appears to concede, that where, as here, coercive relief (compel arbitration) is sought in addition to declaratory relief, the applicable standard is ***Colorado River***, as refined by the Supreme Court in ***Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1 (1983). We agree. *See* ***Southwind Aviation, Inc. v. Bergen Aviation, Inc.***, 23 F.3d 948, 951 (5th Cir. 1994).

The parties disagree, however, about (1) our jurisdiction to consider the stay order; and (2) the district court's application of the six factors used to determine whether a case falls within the "extraordinary and narrow exception", warranting surrender of the "virtually unflagging obligation" to exercise jurisdiction, ***Colorado River***, 424 U.S. at 817, in the light of concerns regarding "federalism, comity, and conservation of judicial resources". ***Black Sea***, 204 F.3d at 650 (citing ***Evanston Ins. Co. v. Jimco, Inc.***, 844 F.2d 1185, 1189 (5th Cir. 1988)). Those six factors are:

> (1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking jurisdiction.

5

*Id.* (citation omitted).

A.

Regarding jurisdiction, Safety maintains that, under *Cone*, 460 U.S. at 10, a district court's stay of federal proceedings in deference to a pending state action *is* a final decision, appealable under 28 U.S.C. § 1291.  BMS contends we have *no* jurisdiction because Safety did *not* establish an exception to the finality rule, as outlined in *Cone*.

*Cone* provides the answer.  Because, as in *Cone*, arbitrability is the central substantive issue in the federal action at hand, the stay means Safety is "effectively out of court" and "the state court's judgment on the issue [will] be res judicata".  *Cone*, 460 U.S. at 10.  In short, the stay operates as a dismissal.  We have jurisdiction.

B.

In addition to challenging the abstention decision, Safety urges our holding the parties must arbitrate under the FAA.

1.

According to Safety, abstention was improper because, *inter alia*:  its federal action seeks relief under the FAA, and BMS' state action seeks insurance coverage determinations, so the actions are *not* parallel; the state court *cannot* transfer the dispute to the forum where the parties agreed to arbitrate (Missouri), so it is more inconvenient than the federal court;

6

there was *no* progress in the state court action regarding Safety, other than the 1996 non-suit; and, as enunciated in **Cone**, 460 U.S. at 26, arbitration is an important issue of federal law, "weighing against" abstention.

BMS counters that the district court properly abstained because construction of the SSA and the policies under state contract law is required *before* Safety's entitlement to FAA relief can be addressed. In this regard, but without any support in the record, BMS states that: at the time it entered into the SSA, it mistakenly assumed the Safety policies contained a valid arbitration clause; but, as a result of subsequent discovery, it learned the underlying Lloyd's of London policy to which Safety's policies must "follow form" does *not* contain an arbitration provision and, in fact, includes a "service of suit" clause. Safety replies that, as noted, the underlying policy is *not* in the record.

BMS also maintains, *inter alia*, that: because the state court is authorized by Congress to apply the FAA and obligated to grant relief if warranted, it would be a waste of judicial resources to require the federal district court to "retain a case merely because it contains a second-tier federal issue"; the state and federal courts may render different interpretations of the SSA and the policies at issue; and the state court's substantial contribution in resolving BMS' more comprehensive coverage suit, which Safety

7

participated in for more than two years, makes it the more suitable forum.

Once again, *Cone* provides the answer. There, the Supreme Court held that Congress' desire "to move parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible", as a matter of federal law, counseled against abstention. *Cone*, 460 U.S. at 22-23. It further held the "piecemeal litigation" factor is *not* applicable in the FAA context, where the overriding federal policy is "to give effect to ... arbitration agreement[s]". *Id.* at 20. *See also* **Black Sea**, 204 F.3d at 650-51 n.7 (where, as here, there is no res at issue, danger of inconsistent rulings is less relevant). Needless to say, federal policy favoring arbitration is hardly a "second-tier" issue, as so described by BMS.

The other relevant factors also fail to support abstention. Regarding which court first had jurisdiction, Safety was *not* a party to the state court action after February 1996, per the July 1995 SSA. Therefore, the proper time frame for comparison is April 1998, when BMS filed its 13th amended petition (**Bristol I**) and Safety filed this action (**Bristol II**).

Additionally, despite BMS' contention that state contract law governs interpretation of the SSA, only rarely will "the presence of [a] state law issue[] weigh[] in favor of" abstention, and even where the state court can adequately protect all parties, this fact

8

"can only be a neutral factor or one that weighs against ... abstention". *Evanston*, 844 F.2d at 1193. In sum, the "extraordinary circumstances" for abstention are *not* present.

2.

Safety contends that, because, in its appellate brief, BMS raised the merits of the underlying issue of arbitrability, and the Safety policies and the SSA are in the record, available for our review, we should hold the parties can only proceed in arbitration, pursuant to the FAA. Safety points to the district court's interpretation of the SSA as "infer[ring], without expressly providing, that upon entry of final judgment in the Texas court disposing of all claims against all other defendants, BMS or [Safety] could compel the other to arbitrate". BMS responds that remand is required, because the district court did *not* address the validity of the arbitration provisions at issue.

Arbitrability *vel non* is *not* properly before us. On remand, the district court must, *inter alia*, determine whether the parties' coverage dispute "is governed by an arbitration clause", and "resolve doubts concerning [its] scope ... in favor of an arbitration". *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (internal quotation marks and citation omitted).

### III.

For the foregoing reasons, the stay order is **VACATED**, and this action is **REMANDED** for further proceedings consistent with our opinion.

*VACATED and REMANDED*